## SABBATH v. UNITED STATES.

No. 898.   Argued May 2, 1968.—Decided June 3, 1968.

*Murray H. Bring,* by appointment of the Court, 390 U. S. 935, argued the cause and filed briefs for petitioner.

*John S. Martin, Jr.,* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Vinson, Beatrice Rosenberg,* and *Kirby W. Patterson.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is whether petitioner's arrest was invalid because federal officers opened the closed but unlocked door of petitioner's apartment and entered in order to arrest him without first announcing their identity and purpose. We hold that the method of entry vitiated the arrest and therefore that evidence seized in the subsequent search incident thereto should not have been admitted at petitioner's trial.

On February 19, 1966, one William Jones was detained at the border between California and Mexico by United States customs agents, who found in his possession an ounce of cocaine. After some questioning, Jones told the agents that he had been given the narcotics in Tijuana, Mexico, by a person named "Johnny," whom he had accompanied there from Los Angeles. He said he was to transport the narcotics to "Johnny" in the latter city.

Also found in Jones' possession was a card on which was written the name "Johnny" and a Los Angeles telephone number. On the following day at about 3 p. m., Jones made a call to the telephone number listed on the card; a customs agent dialed the number, and with Jones' permission, listened to the ensuing conversation. A male voice answered the call, and Jones addressed the man as "Johnny." Jones said he was in San Diego, and still had "his thing." The man asked Jones if he had "any trouble getting through the line." Jones replied that he had not. Jones inquired whether "Johnny" planned to remain at home, and upon receiving an affirmative answer, indicated that he was on his way to Los Angeles, and would go to the man's apartment.

At about 7:30 that evening, the customs agents went with Jones to an apartment building in Los Angeles. The agents returned to Jones the cocaine they had seized from him, and placed a small broadcasting device on him. The agents waited outside the building, listening on a receiving apparatus. Jones knocked on the apartment door; a woman answered. Jones asked if "Johnny" was in, and was told to wait a minute. Steps were heard and then a man asked Jones something about "getting through the line." Because of noise from a phonograph in the apartment, reception from the broadcasting device on Jones' person was poor, but agents did hear the word "package."

The customs agents waited outside for five to 10 minutes, and then proceeded to the apartment door. One knocked, waited a few seconds, and, receiving no response, opened the unlocked door, and entered the apartment with his gun drawn. Other agents followed, at least one of whom also had his gun drawn. They saw petitioner sitting on a couch, in the process of withdrawing his hand from under the adjacent cushion. After placing petitioner under arrest, an agent found the package of cocaine under the cushion, and subsequently other items (e. g., small pieces of tin foil) were found in the apartment; officers testified at trial they were adapted to packaging narcotics.

Petitioner and Jones were indicted for knowingly importing the cocaine into this country and concealing it, in violation of § 2 of the Narcotic Drugs Import and Export Act, as amended, 35 Stat. 614, 21 U. S. C. §§ 173 and 174. Petitioner was tried alone. The narcotics seized at petitioner's apartment were admitted into evidence, over objection. On appeal, following the conviction, the Court of Appeals for the Ninth Circuit ruled that the officers, in effecting entry to petitioner's apartment by opening the closed but unlocked door, did not "break open" the door within the meaning of 18

U. S. C. § 3109 and therefore were not required by that statute to make a prior announcement of "authority and purpose." 380 F. 2d 108. We granted certiorari, 389 U. S. 1003 (1967), to consider the somewhat uncomplicated but nonetheless significant issue of whether the agents' entry was consonant with federal law.[1] We hold that it was not, and therefore reverse.

The statute here involved, 18 U. S. C. § 3109,[2] deals with the entry of federal officers into a dwelling in terms only in regard to the execution of a search warrant. This Court has held, however, that the validity of such an entry of a federal officer to effect an arrest without a warrant "must be tested by criteria identical with those embodied in" that statute. *Miller* v. *United States*, 357 U. S. 301, 306 (1958); *Wong Sun* v. *United States*, 371 U. S. 471, 482–484 (1963).[3] We therefore agree with

---

[1] The Government contends in this Court that petitioner did not adequately raise at trial the issue of the agents' manner of entry, and therefore that it did not have sufficient opportunity to indicate the full circumstances surrounding the entry and petitioner's arrest. However, petitioner's trial counsel, in the course of objecting, clearly stated there were no facts "sufficient to justify this officer's breaking into" the apartment, and his objection was truncated by a ruling of the trial judge. In any event, the Government met the issue on the merits in the Court of Appeals, and apparently did not there contend the record was inadequate for its resolution; and the Court of Appeals decided the issue on the merits. In these circumstances, we are justified in likewise doing so.

[2] "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

[3] See also, e. g., *Ng Pui Yu* v. *United States*, 352 F. 2d 626, 631 (C. A. 9th Cir. 1965); *Gatlin* v. *United States*, 117 U. S. App. D. C. 123, 130, 326 F. 2d 666, 673 (C. A. D. C. Cir. 1963); *United States* v. *Cruz*, 265 F. Supp. 15, 21 (W. D. Tex. 1967).

the parties and with the court below that we must look to § 3109 as controlling.

In *Miller* v. *United States, supra,* the common-law background to § 3109 was extensively examined.[4] The Court there concluded, *id.,* at 313:

> "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, had declared in § 3109 the reverence of the law for the individual's right of privacy in his house."

It was also noted, *id.,* at 313, n. 12, that another facet of the rule of announcement was, generally, to safeguard officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there. See also *McDonald* v. *United States,* 335 U. S. 451, 460–461 (concurring opinion).

Considering the purposes of § 3109, it would indeed be a "grudging application" to hold, as the Government urges, that the use of "force" is an indispensable element of the statute. To be sure, the statute uses the phrase "break open" and that connotes some use of force. But linguistic analysis seldom is adequate when a statute is designed to incorporate fundamental values and the ongoing development of the common law.[5] Thus, the

---

[4] See also *Ker* v. *California,* 374 U. S. 23, 47–59 (1963) (opinion of BRENNAN, J.).

[5] While distinctions are obvious, a useful analogy is nonetheless afforded by the common and case law development of the law of burglary: a forcible entry has generally been eliminated as an element of that crime under statutes using the word "break," or similar words. See R. Perkins, Criminal Law 149–150 (1957); J. Michael & H. Wechsler, Criminal Law and Its Administration 367–382 (1940); Note, A Rationale of the Law of Burglary, 51 Col. L. Rev. 1009, 1012–1015 (1951). Commentators on the law of arrest have

California Supreme Court has recently interpreted the common-law rule of announcement codified in a state statute identical in relevant terms to § 3109 to apply to an entry by police through a closed but unlocked door. *People* v. *Rosales,* 68 Cal. 2d 299, 437 P. 2d 489 (1968). And it has been held that § 3109 applies to entries effected by the use of a passkey,[6] which requires no more force than does the turning of a doorknob. An unannounced intrusion into a dwelling—what § 3109 basically proscribes—is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door.[7] The protection afforded by, and the values inherent in, § 3109 must be "governed by something more than the fortuitous circumstance of an unlocked door." *Keiningham* v. *United States,* 109 U. S. App. D. C. 272, 276, 287 F. 2d 126, 130 (1960).

---

viewed the development of that body of law as similar. See H. Voorhees, Law of Arrest §§ 159, 172–173 (1904); Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 798, 806 (1924):

"What constitutes 'breaking' seems to be the same as in burglary: lifting a latch, turning a door knob, unhooking a chain or hasp, removing a prop to, or pushing open, a closed door of entrance to the house,—even a closed screen door . . . is a breaking . . . ." (Footnotes omitted.)

See generally Blakey, The Rule of Announcement and Unlawful Entry, 112 U. Pa. L. Rev. 499 (1964).

[6] See, *e. g., Munoz* v. *United States,* 325 F. 2d 23, 26 (C. A. 9th Cir. 1963); *United States* v. *Sims,* 231 F. Supp. 251, 254 (D. C. Md. 1964); cf. *People* v. *Stephens,* 249 Cal. App. 2d 113, 57 Cal. Rptr. 66 (1967). See also *Ker* v. *California,* 374 U. S., at 38.

[7] We do not deal here with entries obtained by ruse, which have been viewed as involving no "breaking." See, *e. g., Smith* v. *United States,* 357 F. 2d 486, 488 n. 1 (C. A. 5th Cir. 1966); *Leahy* v. *United States,* 272 F. 2d 487, 489 (C. A. 9th Cir. 1959). See also Wilgus, n. 5, *supra,* at 806.

The Government seeks to invoke an exception to the rule of announcement, contending that the agents' lack of compliance with the statute is excused because an announcement might have endangered the informant Jones or the officers themselves. See, *e. g., Gilbert* v. *United States,* 366 F. 2d 923, 931 (C. A. 9th Cir. 1966), cert. denied, 388 U. S. 922 (1967); cf. *Ker* v. *California,* 374 U. S. 23, 39–40 (1963) (opinion of Clark, J.); *id.,* at 47 (opinion of BRENNAN, J.). However, whether or not "exigent circumstances," *Miller* v. *United States, supra,* at 309, would excuse compliance with § 3109,[8] this record does not reveal any substantial basis for excusing the failure of the agents here to announce their authority and purpose. The agents had no basis for assuming petitioner was armed or might resist arrest, or that Jones was in any danger. Nor, as to the former, did the agents make any independent investigation of petitioner prior to setting the stage for his arrest with the narcotics in his possession.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK dissents.

---

[8] Exceptions to any possible constitutional rule relating to announcement and entry have been recognized, see *Ker* v. *California, supra,* at 47 (opinion of BRENNAN, J.), and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification. See generally Blakey, n. 5, *supra.*