[Civ. No. 30179. First Dist., Div. Two. Nov. 24, 1971.]

ROBERT H. HART, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Romines, Wolpman, Tooby, Eichner, Sorensen, Constantinides & Cohen and James H. Wolpman for Petitioner.

Evelle J. Younger, Attorney General, Robert R. Granucci and Karl J. Uebel, Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

KANE, J.—On November 2, 1970, pursuant to a search warrant secured on the same day, the house and backyard of premises located at 1827 Clarke Avenue in East Palo Alto were searched by officers of the San Mateo County sheriff's office. Contraband found in the living room, dining room, each of three bedrooms, and the garage, together with marijuana and peyote cactus plants growing in the backyard, were seized.

Petitioner, one of the three men who resided on the premises, was charged with violations of Health and Safety Code sections 11530 (possession of marijuana), 11530.1 (cultivation and processing of marijuana), 11530.5 (possession of marijuana for sale), and 11540 (cultivation of peyote). After a preliminary hearing, during which petitioner's motion to suppress under Penal Code section 1538.5 was denied, petitioner was held to answer to the superior court on all charges, except possession of marijuana for sale.

Following denial of his motion to dismiss the information under Penal Code section 995, petitioner initiated proceedings in this court seeking a writ of prohibition to restrain the superior court from taking any further action.

The fundamental argument by petitioner is that the incriminating evidence was obtained in the course of an unlawful search.

The specific contentions urged are: (1) the search warrant was invalid; (2) the entry made in executing the warrant failed to comply with Penal Code section 1531;[1] and (3) petitioner's right to privacy was violated.

### Validity of Search Warrant

The search warrant authorizing the search of the premises was issued upon the affidavit of Sergeant Ralston Eng of the San Mateo County sheriff's office. The affidavit in support of the search warrant shows that petitioner's neighbor had first informed another officer that he had looked through a fence and had observed what appeared to be marijuana plants growing in petitioner's backyard. Sergeant Eng went to the neighbor's yard and "looked through a ½ inch area separating the wood planks of said fence and personally observed thirty plants five to six feet in height" growing in petitioner's backyard. On the basis of his extensive training and

---

[1]Hereafter all reference to statutes will refer to the Penal Code, unless otherwise stated.

experience in the field of narcotics, he concluded that the plants were marijuana.[2]

■ Petitioner contends, however, that the officer's observation of the marijuana plants growing in the backyard did not furnish sufficient cause to search all the rooms in petitioner's residence.

Health and Safety Code section 11530.1 prohibits a person from planting, cultivating, harvesting, drying or processing any marijuana. Sergeant Eng alleged in his affidavit that articles and property used as a means of committing the offense and intended to be used as a means of committing the offense were located "in and upon the premises and building," and that these articles and property were needed as evidence in the prosecution of the offense. The articles and property were particularly described as "Approximately thirty marijuana plants approximately five to six feet in height, planted and being cultivated in the rear yard of said premises; any processed marijuana found at said premises; any cultivation tools, watering cans, marijuana seeds, fertilizer and garden tools used for cultivation purposes, books or reading materials on the planting, cultivating, harvesting, and processing of marijuana plants and plastic translucent sheets approximately 60 feet by 30 feet."

We conclude that it was reasonable to believe that many of the aforementioned articles would be stored within the house and consequently a search of the entire house, pursuant to the search warrant, was proper.

### Did the Officers Comply with Penal Code Section 1531?

■ Petitioner next contends that the officers did not comply with section 1531 when they executed the search warrant.

Section 1531 reads as follows: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

Sergeant Eng testified that he first knocked on the front door *several* times drawing no response. He *then looked* through an undraped window into the living room but saw no one, although he did see a partially smoked, hand-rolled cigarette and several packages of zig zag paper. He *knocked on the window several times* and still received no response. He then went to the back of the house, thinking someone might be in back.

---

[2]Sergeant Eng had been a deputy sheriff for approximately twelve years, eight of which had been spent in narcotic law enforcement and during which he had seen "several thousand" marijuana plants.

After *knocking on a side door,* again receiving no response except from a barking dog inside the house, he returned to the front door and *knocked again.* He noticed lights were on in the house and that the dog was then in the living room. He again knocked on the front door—still no response. He then tried the front door, and when he found it opened, he went in. No one was present within the house. Approximately 10 minutes later one of petitioner's cotenants, Vandagriff, arrived, was advised of the search warrant, placed under arrest and given a *Miranda* warning. A few minutes later petitioner arrived and was arrested.

Petitioner argues that because Sergeant Eng did not announce his authority and purpose[3] the entry to execute the search warrant was unlawful. The People contend that notice of authority and purpose would be futile until there was some indication someone was inside, and since in this particular case no one actually was inside, failure of the officer to announce his "authority and purpose" may be excused.

In our view the position of the Attorney General is unassailable.

Despite the voluminous number of decisions in recent years covering the general subject of search and seizure we are here confronted with a question of first impression, viz.: Where no human being is present on premises to be searched, must a peace officer in executing a search warrant nevertheless announce "his authority and purpose" before entering the premises?

Petitioner contends that we must answer this question in the affirmative. He relies primarily upon three decisions of our Supreme Court—*Greven* v. *Superior Court* (1969) 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129]; and *Duke* v. *Superior Court* (1969) 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628]. Each of these cases, however, specifically dealt with section 844[4] which, although identical in fundamental principle with section 1531 (*Greven* v. *Superior Court, supra,* p. 292, fn. 6), has an entirely and signifi-

---

[3]Actually, the record is silent as to whether the officer did or did not announce; but since the burden is on the People to show compliance with section 1531, we will assume for purposes of discussion that Sergeant Eng did not announce "his authority and purpose."

The record does reveal, however, that Sergeant Eng's prior experience included participation in the execution of more than 100 search warrants.

[4]Section 844 reads as follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

cantly different objective. Therefore, as applied to the facts of this case, we do not believe that the holding of those cases is applicable.

Because of the general similarity of the purposes of the two sections, an initial reading of those cases directly interpreting section 844 would suggest that technical and literal compliance with the terms of section 1531 is mandatory. Careful analysis, however, dispels such an unreasonable, unworkable rule.

What must be kept in mind is accomplishment of the objective and intent of the statute rather than adherence to what Justice Mosk so aptly describes as "ritualistic compliance" (*Duke* v. *Superior Court, supra,* 1 Cal. 3d at p. 327).

The general purposes of Penal Code section 844 (and Pen. Code, § 1531) are very definitively expressed in *Duke, supra,* as follows: "The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home (see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; *Miller* v. *United States, supra,* 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292; *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6]); (2) the protection of innocent persons who may also be present on the premises where an arrest is made (see *People* v. *Rosales, supra,* 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489]); (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292-293; see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589; *Miller* v. *United States, supra,* 357 U.S. 301, 313, fn. 12 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 304; and (4) the protection of police who might be injured by a startled and fearful householder." (P. 321.)

Obviously, the factual situation in each case must be considered in the light of these judicially declared purposes. Thus, a body of law in this field has developed to such an extent that our state Supreme Court has recently pointed out that "substantial compliance" can occur only when there has been some attempt to comply whereas "excused noncompliance" can occur in situations where either the attempt falls short of substantial compliance and/or where there has been no attempt whatsoever (*People* v. *Hall* (1971) 3 Cal.3d 992, 998, fn. 3 [92 Cal.Rptr. 304, 479 P.2d 664]). In short, the rule, under either section, is not mechanical, i.e., that in every case there must always be verbal notice of authority and purpose.

While the *general purposes* and intent of the two sections are similar, there are strikingly significant differences:

(1) Section 844 applies to either a private person or a peace officer whereas section 1531 applies only to peace officers (and only those mentioned in the warrant (Pen. Code, § 1530)).

(2) Section 844—by its terms—only applies to a situation the objective of which is the *arrest of a person;* whereas section 1531 deals with the situation where the objective is acquisition or seizure of things.

(3) Section 844 by its own terms provides that the entry can only be made if the person to be arrested is actually present or if the arrestor has reasonable grounds to believe he is present.

This accounts for the statement in *Greven, supra,* at page 293 footnote 9, "It is clear, of course, that section 844 does not permit forcible entry in any case unless the person to be arrested is, or is reasonably believed to be, within the structure to be entered."

No such provision is contained in section 1531. Both section 844 and section 1531 were enacted at the same time (1872). The differences in language which we have pointed out are perfectly consistent with the differences in objectives which exist between apprehending a person and seizure of evidence.

In many situations calling for the use and execution of a search warrant, it will even be contemplated that the premises will not be occupied. To apply the section 844 rule, announced in *Greven, supra,* to section 1531, i.e.—no entry can be made unless someone is either present or reasonably believed to be present—would frustrate the orderly administration of justice. It would require police agencies who have followed the preferred method of obtaining search warrants wherever possible[5] to either make certain that an occupant was present before going to the premises which in and of itself could frustrate the purpose of the search—or simply take a chance that someone will be present and if not—try again. This latter system has inherent hazards, also. An innocent, but curious neighbor, might easily observe the arrival and attempt by the officers to execute the warrant. (This would certainly be likely if—in addition to knocking on the door—the officers would be required to verbally identify themselves, albeit to no one.)

---

[5]"Moreover, we encourage the use of warrants for search and arrest, our greatest protection against illegal intrusions upon persons, houses, papers and effects of the people. [Citations.]" (*People* v. *King* (1971) 5 Cal.3d 458 [96 Cal.Rptr. 464, 487 P.2d 1032], dissent of Peters, J., p. 467.)

No California decision has been cited to us standing for the proposition that section 1531 prohibits entry in any case unless an occupant is either present, or reasonably believed to be present, in the premises to be searched.[6]

However, in addition to the reasons which we have advanced for holding that such is not required as a condition precedent to lawful forcible entry to execute a search warrant pursuant to section 1531, we find persuasive authority in the case of *People* v. *Johnson* (Gen. Sess. 1962) 231 N.Y.S.2d 689.

In that case, as here, the premises were unoccupied at the time of the entry and search. Also in that case, as here, the defendant arrived on the premises after the entry at which time he was arrested.

The New York police, in executing the search warrant, were subject to Code of Criminal Procedure section 799 which is practically identical to our California Penal Code section 1531.[7]

The New York court upheld the search despite a lack of announcement of authority and purpose on the basis that "The demand for admittance and the giving notice of the authority and purpose required by the statute *presupposes the presence of a human being on the premises. This requirement is not necessary where there is no one found in charge of the premises to be searched* (47 Am.Jur. 526, 24 R.C.L. 708)." (Italics added.)

The same rule is set forth in 79 Corpus Juris Secundum, Searches and Seizures, section 83, page 906, as follows: "[B]ut the provision of a statute that officers executing a search warrant may break doors or windows, if after notice of their authority they are refused admission, does not prevent

---

[6]Our own research, however, discloses one Court of Appeal decision which, without considering any distinction between sections 844 and 1531 simply applies the 844 rule to section 1531 (*Lockridge* v. *Superior Court* (1969) 275 Cal.App.2d 612, 626 [80 Cal.Rptr. 223]). In doing so, the court relies on *Greven, supra,* particularly the comment of the *Greven* court in disapproving *People* v. *Cox* (1968) 263 Cal.App.2d 176 [69 Cal.Rptr. 410]. However, *Cox* involved execution of an *arrest warrant* and is therefore subject to section 844. As we have also pointed out, *Greven* itself deals only with section 844.

[7]New York Code of Criminal Procedure section 799 at that time read as follows: "Officer may break open door or window, to execute warrant. The officer may break open an outer or inner door or window of a building, or any part of the building, or any thing therein, to execute the warrant, *if, after notice of his authority and purpose he be refused admittance.*" (Italics added.)

This similarity is understandable in view of the fact that section 1531 was based on the preexisting New York statute (see Legislative History, Deering's Annotated Penal Code section 1531).

officers executing a warrant from forcing an entrance into a house without notice, and without first demanding admittance, where the house is at the time unoccupied."

To place a case in this latter category, one would be hard pressed to imagine a set of facts stronger than those at bench. The extent of knocking at various parts of petitioner's residence was obviously done to evoke a response from within. To uphold petitioner's contention here would require this court to take the incredibly ridiculous position of holding that Sergeant Eng should nonetheless have stated his authority and purpose to no one. Such a rule would in the long run simply encourage police officers to become mechanical in similar situations, or worse yet encourage them to say that they "announced" when in fact, they may not have, or can't remember. After all, if no one was present at the time of entry, who could refute the officers' testimony?[8]

Thus, in applying the rule of section 1531, we believe that a common sense interpretation, looking to substance rather than form, is called for.

As the court in New York so cogently observed: "Any other interpretation [of the statute] would permit the occupant of the premises to avoid the effect of an execution of a search warrant by leaving the premises surreptitiously on the approach of the officers or by absenting himself from the premises altogether." (*People* v. *Johnson, supra,* p. 691.)

Thus, in the case of executing a search warrant pursuant to section 1531 as distinguished from making an arrest pursuant to section 844, we hold that where, as here, the evidence supports the conclusion that no one is present on the premises the requirement of giving notice of authority and purpose is not necessary.

This conclusion in no way dilutes the plain language and intent of section 1531. Prima facie, the statute mandates that in executing a search warrant an officer must first determine whether anyone is present within the premises to be searched. If an affirmative determination is made, the officer must request admittance by giving notice of his authority and purpose.

If, however, it is determined that no one is present and if that determination is supported by the evidence, the notice of authority and purpose requirement is not essential to the validity of the entry and subsequent search.

---

[8]Or, as Justice Mosk puts it in his dissent in *Duke, supra,* at page 326: "If no one responds, to whom do they identify themselves?"

## Was Petitioner's Right to Privacy Violated?

█ Petitioner contends that he exhibited a reasonable expectation of privacy when he covered the portion of his backyard in which the plants were growing with a large sheet of plastic, and that his right to privacy was violated when the officer, from the vantage point of the neighbor's premises, looked through the opening in the fence into his backyard. Petitioner cites *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104 [80 Cal. Rptr. 633, 458 P.2d 713], and *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], in support of his contention.

In *People* v. *Edwards* and *People* v. *Krivda, supra,* the police were prohibited from rummaging in trash barrels located respectively (1) a few feet from the back door of the house and (2) on the sidewalk for collection. The rationale behind those cases was that there were "many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, . . ." (*Edwards,* p. 1104, *Krivda,* p. 366). In both cases, the contraband was concealed within the barrels and *was not visible without emptying or searching through the barrels' contents (Krivda, supra,* p. 366). Here, the plants were plainly visible to the neighbor and to the officer whom he invited to his premises to make a similar observation through the fence. Under these circumstances, an expectation of privacy was not reasonable.

The alternative writ of prohibition is discharged; the petition for a peremptory writ of prohibition is denied.

Taylor, P. J., and David, J.,* concurred.

A petition for a rehearing was denied December 24, 1971, and petitioner's application for a hearing by the Supreme Court was denied February 3, 1972. Peters, J., Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.