[Crim. No. 27111. Second Dist., Div. Five. Dec. 30, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES TIMOTHY FORD, Defendant and Appellant.

**COUNSEL**

Alan A. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—On January 13, 1975, an information was filed charging James Timothy Ford (appellant) and Joan Anderson with two counts of violation of section 11350 of the Health and Safety Code, unlawful possession of methadone and unlawful possession of cocaine. Appellant

pleaded not guilty. Appellant's motion to dismiss made pursuant to Penal Code section 995 was denied. Appellant's motion to suppress evidence made pursuant to section 1538.5 was denied. Appellant waived trial by jury and was found guilty of both counts. Appellant appeals from the judgment sentencing him to state prison.

## FACTS

Appellant was a parolee. On June 21, 1974, he was declared to be a parolee at large.[1] His parole was suspended and on June 26, 1974, an all points bulletin was issued for his arrest as an at-large fugitive. Appellant and Joan Anderson were arrested on December 11, 1974. On that day Waldo H. Damerell, a special agent for the Law Enforcement and Liaison Unit of the Department of Corrections whose duties consist of parole investigations, received a call from Joan Anderson's parole officer, Marilyn Townsend. She informed Agent Damerell that her parolee was residing with appellant at 222 South Mariposa, apartment 203, Los Angeles. Officer Howard Baxter of the Los Angeles Police Department had conducted surveillance of the apartment house at 222 South Mariposa for two days prior to December 11, 1974. He observed appellant unlock the door and enter the apartment on December 9 and observed appellant and Miss Anderson leave together on December 10. Officer Baxter then contacted Parole Officer Townsend to confirm her information as to the location where appellant and Miss Anderson could be found. Townsend asked that Officer Baxter and Agent Damerell assist her in the arrest of both appellant and Miss Anderson.

Officer Baxter had received information from Sergeant Weinbeck of the Los Angeles Police Department that on December 5, 1974, appellant had been arrested for possession of a handgun. At that time he gave a false name and was later released.

On December 11, 1974, Damerell, Baxter, and Townsend, and three other Los Angeles Police Department members proceeded to 222 South Mariposa and procured a key to apartment 203 from the manager. Before entering the apartment the officers checked the area for appellant's car but did not find it. They placed a call to apartment 203 and got no response. The manager told them that the appellant might have left for the day but she was not sure. The apartment in fact was not occupied. The officers entered the premises without knocking or announcing their

---

[1] Parolee at large is a designation used by the State Department of Corrections which means that the parolee has absconded from parole supervision.

intentions. At this time a search was made. Approximately 15 minutes later appellant and Miss Anderson arrived and were immediately placed under arrest. A more thorough search was then made, at which time the contraband sought to be suppressed was seized.

## DISCUSSION

Appellant's first contention is that the trial court erred in denying appellant's motion to suppress the evidence under Penal Code section 1538.5. This contention has no merit. Contraband discovered during a constitutionally reasonable search is admissible in evidence. A constitutionally reasonable search can be made in various ways, including where the search is made under the authority of a search warrant or when there is no warrant where it is incident to a lawful arrest, consented to by a defendant or authorized third person or, as in the instant case, where the defendant is a parolee.

"Although parolees are protected against unreasonable search and seizure (*In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 5 [83 Cal.Rptr. 382, 463 P.2d 734]), a parole officer may enter and search a parolee's residence even if the information relied on by the parole officer does not reach the level of probable cause generally required under the Fourth Amendment (*In re Martinez, supra,* p. 647, fn. 6; *People* v. *Thompson* (1967) 252 Cal.App.2d 76, 84-86 [60 Cal.Rptr. 203], cert. den. 392 U.S. 930 [20 L.Ed.2d 1388, 88 S.Ct. 2276]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 149-150 [40 Cal.Rptr. 100], cert. den. 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; *People* v. *Denne* (1956) 141 Cal.App.2d 499, 506-509 [297 P.2d 451]). Briefly summarized, the rationale is that a parolee is at all times in *custodia legis.* Although he is not a prison inmate in the physical sense, he is serving the remainder of his term outside rather than within the prison walls. Accordingly, so far as necessary for the maintenance of parole guardianship, the status of a parolee as a prisoner is no different than that of one who remains in confinement, and, therefore, for the purpose of maintaining the restraints and social safeguards accompanying such status, the correctional authorities who supervise the parolee may subject him, his home and his effects to such constant or occasional inspection as may seem advisable to them *(People* v. *Thompson, supra).*" (*People* v. *Anglin,* 18 Cal.App.3d 92, 95 [95 Cal.Rptr. 588].)

Appellant argues that the evidence should be suppressed because the police officers did not comply with Penal Code section 844.

That section authorizes police officers to break into a habitation to make an arrest if they have reasonable grounds to believe that the suspect is inside and if they have demanded admittance and explained the purpose for their demand for entry.[2] Entry pursuant to section 844, however, merely makes it possible for them to arrest the suspect and make a search incident to the arrest. That right to search for contraband, however, depends upon the arrest being lawful. (See *Chimel* v. *California*, 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034].) Thus where the authority to search is dependent on a lawful arrest, failure to comply with section 844 where it is applicable makes evidence obtained as a consequence of the arrest inadmissible.

Although the mere fact that a suspect is a parolee does not excuse compliance with section 844 (*People* v. *Rosales*, 68 Cal.2d 299, 303 [66 Cal.Rptr. 1, 437 P.2d 489]), appellant's argument misses its mark because the admissibility of the evidence in the instant case was not dependent upon the search being incident to a lawful arrest.

The search conducted by the officers was not pursuant to their general law enforcement duties (see *In re Martinez*, 1 Cal.3d 641, 646 [83 Cal.Rptr. 382, 463 P.2d 734]);[3] the officers knew that appellant and his codefendant were parolees and they were accompanied by the codefendant's parole officer. In this situation the position of the officers is similar to officers acting under Penal Code section 1531 since in both instances the officers have the authority to conduct a search; in the instant case because of appellant's status as a parolee and under section 1531 because of the existence of a search warrant. Where no one is present on the premises, officers executing a search warrant under section 1531 may make forcible entry without giving notice of their authority or purpose. (*Hart* v. *Superior Court*, 21 Cal.App.3d 496 [98 Cal.Rptr. 565].) The same rule applies where a parolee is involved. Where there is no one on the premises, an announcement would be useless and therefore is not

[2]Penal Code section 844 reads as follows: "To make an arrest . . . a peace-officer [ ] may break open the door or window of the house in which the person to be arrested is, or in which [he has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

[3]*In re Martinez, supra*, 1 Cal.3d 641, is not helpful to appellant because in *Martinez* the search by the officers was pursuant to their general law enforcement duties because they were not aware at the time they entered his residence that the defendant was a parolee. The court held that the officers cannot search without probable cause and then later seek to justify their actions by relying upon defendant's parole status which, at the time, was unknown to them.

required.[4] Where the premises are occupied, however, the appropriate announcement is required in both situations unless it is excused under some exception to the general rule. (E.g., see *People* v. *Dumas,* 9 Cal.3d 871, 878 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 303.)

The fact that the officers intended to arrest appellant when they arrived at the apartment does not detract from their authority to enter in his absence and make a search for weapons or contraband.[5] They did in fact make a search upon entering the apartment, although after arresting appellant they made a more thorough search and obtained the evidence appellant seeks to suppress. The officers had authority to search the premises because of appellant's status as a parolee, and their entry in his absence without announcing their identity and purpose did not render the search unlawful. The trial court properly denied the motion to suppress.

[4]The purpose and theory underlying the requirements of section 844 were stated by the Supreme Court in *Duke* v. *Superior Court,* 1 Cal.3d 314, at page 321 [82 Cal.Rptr. 348, 461 P.2d 628], as follows: ". . . The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home (see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589 [20 L.Ed.2d 828,.833, 88 S.Ct. 1755]; *Miller* v. *United States, supra,* 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made (see *People* v. *Rosales, supra,* 68 Cal.2d 299, 304); (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292-293; see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589; *Miller* v. *United States, supra,* 357 U.S. 301, 313, fn. 12 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 304; and (4) the protection of police who might be injured by a startled and fearful householder."

[5]Even if the officers had not been authorized to enter and search in appellant's absence, they would have been excused from compliance with section 844 because they had reason to believe that compliance would increase the peril to them in making the arrest. (*People* v. *Dumas, supra,* 9 Cal.3d 871, 878; *People* v. *Tribble,* 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589].) Agent Damerell was told by Miss Anderson's parole officer that appellant had been armed. Officer Baxter also had received information from Sergeant Weinbeck that a cursory search of appellant on December 8, 1974, after they were informed by victims that appellant was going to shoot them, revealed that appellant had a gun concealed in his waistband. Both Agent Damerell, Officer Baxter and codefendant's parole officer also were informed by appellant's landlady that she had received information from a tenant that appellant had taken a gun onto the premises.

It seems clear that the officers did not believe that appellant was on the premises but they believed that, if he were, compliance with the provisions of section 844 would expose them to increased peril because of the fact that he had been in possession of a gun, and because he was in violation of parole he might be inclined to attempt to escape or resist.

Appellant's second contention is that there was insufficient evidence to show that appellant exercised dominion and control over the contraband. This contention is not meritorious.

"Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic." (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) Those elements may be established by circumstantial evidence and inferences. (*People* v. *Groom, supra* at pp. 696-697.)

The officers observed appellant enter and leave apartment 203 during two days prior to the arrest. They saw appellant insert what appeared to be a key in the door. When arrested, after unlocking the door to the apartment, appellant asked if he could have "his" keys back. An officer observed several scars on appellant's arms which ranged in age from 2 to 15 days and in the officer's opinion were from the injection of opiates. Men's clothing that appeared to be appellant's size was in the dressing area. One officer testified that pictures of appellant's family were also found in the closet. Taking all this evidence in the light most favorable to respondent, as we must, we find the evidence sufficient to support a finding that appellant was living in the apartment. By his presence there, he exercised dominion and control over the contraband. Since it was located all over the apartment, including in the refrigerator, he must have had knowledge of its presence. From the fact that appellant admittedly had used narcotics in the past, it can be inferred that he knew that the materials that were seized were narcotic in nature. Therefore, all three prongs needed to establish possession as set forth in *People* v. *Groom, supra,* have been met.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1976.