627 P.2d 676

**STATE of Arizona, Appellant,**

v.

**Gilbert Leonard SANCHEZ, and Tony Galaz Valenzuela, Appellees.**

**No. 5036–PR.**

Supreme Court of Arizona, In Banc.

March 20, 1981.

Rehearing Denied May 5, 1981.

Stephen D. Neely, Pima County Atty., Barbara LaWall, D. Jesse Smith, Deputy County Attys., Tucson, for appellant.

Bertram Polis, Tucson, for appellees.

GORDON, Justice:

Appellees were indicted by a Pima County Grand Jury for unlawful possession of marijuana for sale and conspiracy in the first degree. Before trial, their motion to suppress evidence seized in the search of a house was granted in Pima County Superior Court on the sole ground that the officers who executed the search warrant failed to comply with the requirements of A.R.S. § 13–3916(B):

"An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

"1. After notice of his authority and purpose, he receives no response within a reasonable time.

"2. After notice of his authority and purpose, he is refused admittance."

The trial court suppression order was upheld by the Court of Appeals, 128 Ariz. 547, 627 P.2d 698 (1980). We accepted the state's petition for review, taking jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 31.19,

17 A.R.S., Rules of Criminal Procedure. We vacate the opinion of the Court of Appeals and reverse the Superior Court order granting appellees' motion to suppress.

Upon receiving information from an anonymous citizen that there was a large quantity of marijuana in a house at 1608 South Highland in Tucson, Arizona, state law enforcement officers began surveillance. The house and surrounding yard were enclosed by a six-foot chain link fence with double gates secured by a chain and padlock. The officers observed that the gates were always kept locked and that people who approached the gates had to wait for someone to come out of the house and open the gates in order to approach the house.

After a day and a half of surveillance, the officers obtained a search warrant for the premises at 1608 South Highland. They approached in three marked vehicles and one unmarked vehicle. Two of the officers wore regular uniforms. The rest wore "police raid jackets," blue blazers with patches on the arms and "police" written across the front. The officers cut the lock securing the chain link fence gates and entered the yard surrounding the house without announcing their authority and purpose. As the officers were entering the yard, appellees walked out of the house onto the front porch. At that time, the officers identified themselves and announced that they had a search warrant.

Appellees contended in their motion to suppress that the fence and gate surrounding the house were "premises" within the meaning of A.R.S. § 13–3916(B), *supra*. They claim that the officers' failure to announce their authority and purpose before cutting the lock on the chain link fence gates therefore violated the notice requirements of that statute.

The issue before us is whether the word "premises" in A.R.S. § 13–3916(B) encompasses the yard surrounding the house and enclosed by the chain link fence.

The Court of Appeals, in addressing this issue, relied on the scope which Arizona courts have accorded the word "premises" in the context of search warrants. In that regard, we have said, "[a] search of the premises may include property that constitutes a logical part of the residential premises." *In Re One 1970 Ford Van, I.D. No. 14GHJ55174, L.No. CB 4030*, 111 Ariz. 522, 523, 533 P.2d 1157, 1158 (1975). The Court of Appeals similarly has stated, "[a] search of premises, however, may include all property necessarily a part of the premises and so inseparable as to constitute a portion thereof." *State v. Caldwell*, 20 Ariz.App. 331, 334, 512 P.2d 863, 866 (1973); *accord, State v. Dixon*, 125 Ariz. 442, 610 P.2d 76 (App.1980). From this the Court of Appeals concluded that under the circumstances of this case, "premises" would include "a locked gate in a fence surrounding a residence."

One of the circumstances upon which the Court of Appeals based its conclusion was that the gate was always kept locked, which the Court felt indicated that the occupants of the house "had a 'reasonable expectation of privacy' in their front yard * * *. *Katz v. United States*, 389 U.S. 347, 83 S.Ct. 507, 19 L.Ed.2d 576 (1967)." The Court reasoned that "[c]onversely, had the gate not been locked there would have been no occasion to 'break into' the premises * * * and the knock and announce statute would have been inapplicable until the officers reached the residence."

We first note that we are here concerned with the scope of a knock and announce rule, not with the necessity of obtaining a search warrant because the area was one in which the appellees had a "reasonable expectation of privacy." It is undisputed that the officers had obtained a search warrant.

We also note that very little force is necessary to bring knock and announce rules into force. The United States Supreme Court has held that a statute similar to A.R.S. § 13–3916(B) governed the opening of a closed but unlocked door, explaining:

"An unannounced intrusion into a dwelling—what § 3109 basically proscribes—is no less an unannounced intru-

sion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door."

*Sabbath v. United States,* 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 834 (1968).[1] We have held a former Arizona statute[2] imposing the knock and announce rule to be applicable to the pushing open of a door which was neither locked nor completely latched in *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977). We believe, therefore, that the applicability of A.R.S. § 13–3916(B) does not depend on whether the gates on the chain link fence were locked or unlocked.

■ We agree with the dissent in the Court of Appeals opinion that, in the context of A.R.S. § 13–3916(B), "[t]he meaning of the word ['premises'] should not be equated with the area within which a search is authorized by a warrant." The legal concept of "premises" is fluid and depends on the situation and purpose of its use. *People v. Atwood,* 223 Cal.App.2d 316, 35 Cal.Rptr. 831 (1963). "The word 'premises' does not have a particular meaning beyond that dictated by the circumstances in which it is used. 'Premises' can refer to a single room (citation omitted), a large tract of farmland (citation omitted), or an apartment building or other multiple use building * * *." *People v. Muniz,* Colo., 597 P.2d 580, 582 (1979).

We recently noted that "[w]here a word in a statute is susceptible of more than one meaning the court must adopt such interpretation as is reasonable." *Amphitheater Unified School District # 10 v. Court Commissioner,* 128 Ariz. 233, 624 P.2d 1281 (1981). A.R.S. § 1–211(B) instructs that "[s]tatutes shall be liberally construed to effect their objects and to promote justice." We believe that we should interpret the word "premises" in A.R.S. § 13–3916(B) in a way that is reasonable, promotes justice, and effects the objects, or purposes, of that statute.

■ The right which knock and announce rules provide occupants is the right to be warned that their privacy is about to be legally invaded. *State v. Bishop,* 288 Or. 349, 605 P.2d 642 (1980). While A.R.S. § 13–3916(B) requires officers to give notice of their authority and purpose before breaking into buildings, premises or vehicles, once proper notice is given, the officers may enter regardless whether the occupant grants them permission to enter, refuses them admittance, or simply does nothing. A homeowner has no right to prevent a law enforcement officer with a valid warrant from entering his home. *Payne v. United States,* 508 F.2d 1391 (5th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Bustamante-Gamez,* 488 F.2d 4 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

■ The purposes for requiring notice before officers make forcible entry into an area are generally held to be (1) protecting both occupants and law enforcement officers by preventing violent confrontations which may occur upon unannounced intrusions, (2) protecting individuals' rights of privacy in their homes as well as preventing unexpected exposure of occupants' private activities, and (3) preventing the destruction of property resulting from forced entry. *See, e. g., Sabbath, supra; Payne, supra; Bustamante-Gamez, supra; People v. Solario,* 19 Cal.3d 760, 139 Cal.Rptr. 725, 566 P.2d 627 (1977); *People v. Ouellette,* 78

---

1. The statute involved in *Sabbath* was 18 U.S.C. § 3109:

   "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

2. Former A.R.S. § 13–1411 stated: "An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, as provided in § 13–1403, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

Ill.2d 511, 36 Ill.Dec. 666, 401 N.E.2d 507 (1979); *State v. Prudhomme*, Minn., 287 N.W.2d 386 (1979); *Bishop, supra* ; 2 W. LaFave, Search and Seizure, § 4.8(a) (1978). All three of these purposes assume the presence of occupants in the area into which officers intend to forcibly enter. Without occupants, unannounced intrusions would cause no more violence and invade no more privacy than announced intrusions. Without occupants to admit officers voluntarily, destruction of property would not be avoided by prior notice.

Several jurisdictions have held that officers executing search warrants may, without first giving notice of their authority and purpose, make forcible entries into vacant premises. *United States v. Brown*, 556 F.2d 304 (5th Cir. 1977); *United States v. Agrusa*, 541 F.2d 690 (8th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); *Payne, supra; Diamond v. State*, 363 So.2d 109 (Ala.Cr.App.1978); *People v. Ford*, 54 Cal.App.3d 149, 126 Cal. Rptr. 396 (1975); *Hart v. Superior Court*, 21 Cal.App.3d 496, 98 Cal.Rptr. 565 (1971); *Erickson v. State*, 597 P.2d 344 (Okl.Cr.App. 1979). As the Fifth Circuit noted, "it is futile to require police to wait for refusal of admittance to an unoccupied dwelling." *Brown, supra*, at 305. Certainly none of the purposes enumerated above would be furthered by requiring notice before entering a vacant area.

Other courts have held that notice is not required before breaking into certain semi-private areas outside the integral living areas of homes. *See People v. Malone*, 175 Colo. 31, 485 P.2d 499 (1971) (compliance not required before entering outer door and then proceeding down some steps to inner door); *People v. Harvey*, 38 Mich.App. 39, 195 N.W.2d 773 (1972) (compliance not required before entering a screened-in porch through an outer screen door); *State v. Brothers*, 12 Or.App. 435, 507 P.2d 398 (1973) (compliance not required before entering outer locked door of apartment house); *State v. Steingraber*, S.D., 296 N.W.2d 543 (1980) (compliance with knock and announce statute not required before entering enclosed screen porch through an outer screen door); *cf. State v. Slezak*, 115 R.I. 599, 350 A.2d 605 (1976). *But see, United States v. Fluker*, 543 F.2d 709 (9th Cir. 1976). While we do not adopt any of the above holdings in this case, we feel they demonstrate a logical extension of the principle that knock and announce rules are not required in vacant areas because their application in the absence of people is futile.

In the case before us, it was apparent to the officers that the yard within the chain link fence and outside the house was vacant. Yet the officers were also reasonably certain that the house itself was occupied. Although the yard would probably be considered part of the premises for purposes of executing a search warrant, it is doubtful that the purposes of A.R.S. § 13–3916(B) would have been advanced by considering the yard part of the "premises" as the word is used in that statute, resulting in required announcement at the locked gates.

While "[a]n unexpected breaking into a home by officers might well result in their being killed under the impression that the home owner was protecting his family and his home against intruders," *State v. Mendoza*, 104 Ariz. 395, 399, 454 P.2d 140, 144 (1969), violent confrontations are less likely to occur and more difficult to justify in response to unannounced breaking into fenced yards. The manner of entry into this fenced yard also had little impact, if any, on the occupants' right of privacy and led to no embarrassing exposure of private activities.

It is possible that a request for admission at the locked gate would have prevented the destruction of property. It appears from the record, however, that a bullhorn or some other voice amplification device would have been necessary to enable the occupants of the house to hear the officers' announcement at the gates. Our research has disclosed no cases requiring such a procedure. Indeed, the necessity to amplify notice itself suggests that the purposes of notice would not be served by its performance.

We hold that an interpretation of the word "premises" in A.R.S. § 13–3916(B) which would require notice at the gates of the chain link fence in question before breaking through these gates neither is reasonable nor promotes justice or the objects of that statute. We believe that the word "premises" in A.R.S. § 13–3916(B) was meant to refer to enclosures other than buildings or vehicles in which people are likely to be whose privacy might be invaded by and/or who might react violently to unannounced intrusions. We agree with the Court of Appeals' logic that, by its statutory language change, the Legislature indicated an obvious intention to expand the knock and announce requirement to areas other than houses. Our interpretation, however, is that the Legislature also intended those newly protected areas to be occupied.

Accordingly, the opinion of the Court of Appeals is vacated. The Superior Court order granting appellees' motion to suppress is reversed. The case is remanded to the Pima County Superior Court for proceedings not inconsistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.