225 P.3d 1156

**STATE of Arizona, Appellee,**

v.

**Paula Ann ROBERSON, Appellant.**

**No. 1 CA–CR 09–0066.**

Court of Appeals of Arizona, Division 1, Department A.

March 16, 2010.

Emily Danies, Attorney at Law, Tucson, Attorney for Appellant.

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal

Appeals/Capital Litigation Section, William S. Simon, Assistant Attorney General, Phoenix, Attorneys for Appellee.

### OPINION

DOWNIE, Judge.

¶ 1 Paula Ann Roberson ("defendant") challenges the superior court's denial of her suppression motion. We affirm and hold that violation of the "knock-and-announce" rule did not require suppression of evidence obtained pursuant to a valid search warrant for defendant's home under either the federal or state constitution.

### FACTS AND PROCEDURAL HISTORY

¶ 2 The Yavapai County Sheriff's Office was investigating defendant for selling drugs. Detective D. prepared a search warrant affidavit that detailed the investigation and the basis for searching defendant's home. Near the end of the affidavit, Detective D. stated:

Affiant believes that the following information demonstrates good cause for permitting this warrant to be served.

*UNANNOUNCED,* per ARS 13–3916B ☒

*And IN THE NIGHT,* per ARS 13–3917 XX

The following paragraphs of the affidavit explained the need for an unannounced nighttime search, referencing "the ease by which methamphetamine can be secreted and/or destroyed," the anticipated presence of weapons at the residence, and defendant's use of "counter-surveillance equipment" at her home. Detective D. then stated:

[I]t is your affiant's best guess, based on experience, that an unannounced warrant allows for the greatest success in a safe outcome both for the police officers involved as well as for the suspects, and for the preservation of evidence. It should also be emphasized that methamphetamine ... is water-soluble and very easily disposed of by flushing, pouring into a sink, eating and by many other means.... It is for these reasons, officer safety, suspect safety and preservation of evidence that your affiant is requesting that this search warrant be served unannounced.

¶ 3 Detective D. made a telephonic search warrant request. The presiding magistrate considered the officer's nine-page affidavit and discussed with him the circumstances of the proposed search:

[Magistrate]: You're requesting an unannounced, uh, that you serve it unannounced and in the night ... is that correct?

[Detective D.]: That's correct.

[Magistrate]: Okay. Okay.

¶ 4 The magistrate found probable cause for the search and signed a warrant that Detective D. had drafted, authorizing a "day-time and/or night-time" entry. The warrant, however, said nothing about an unannounced entry.

¶ 5 At approximately 6:30 p.m. on July 10, 2007, officers executed the search warrant at defendant's home. Detective D. found the front door to the residence closed but unlocked. Believing he had a "no knock" warrant, the detective opened the door, stepped into the living room, and announced, "[S]heriff's office search warrant." Defendant was in the bedroom. Officers seized drugs and drug paraphernalia during the ensuing search.

¶ 6 Defendant moved to suppress all evidence obtained during the search, claiming officers were not authorized to enter her home without first knocking and announcing their presence. The superior court held an evidentiary hearing and took the motion under advisement. It later requested supplemental briefing regarding *Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), which held that, under the Fourth Amendment, a violation of the knock-and-announce rule does not require suppression of evidence obtained pursuant to a valid search warrant for a home.

¶ 7 Both sides submitted supplemental memoranda. The superior court, in a thorough and well reasoned ruling, denied the suppression motion. After a jury trial, defendant was found guilty of possession of a dangerous drug for sale (methamphetamine), possession of marijuana for sale, and possession of drug paraphernalia. Defendant timely appealed. We have jurisdiction pursuant

to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 13–4031 and –4033 (2001).

## DISCUSSION

¶8 The only issue on appeal is whether the superior court erred in denying defendant's suppression motion. Although we generally review the denial of a motion to suppress for an abuse of discretion, when a case involves only questions of law, the ruling is reviewed *de novo*. *State v. Valenzuela*, 182 Ariz. 632, 632, 898 P.2d 1010, 1010 (App. 1995) (citations omitted).

¶9 Defendant conceded below that officers had a valid search warrant for her home. She also admitted that, under the United States Constitution and *Hudson*, a knock-and-announce violation does not require suppression of evidence obtained pursuant to a valid search warrant. Defendant's position was and is that Detective D.'s failure to knock and announce his presence before entering her home violated her rights under the Arizona Constitution. According to defendant, *Hudson* is inapplicable because the Arizona Constitution gives her broader protection in her home than the Fourth Amendment.[1]

¶10 The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Article 2, Section 8, of the Arizona Constitution, upon which defendant relies, states: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

¶11 In *Hudson*, police violated the knock-and-announce rule by entering a home too quickly (three to five seconds) after announcing their presence when executing a search warrant for drugs and firearms. 547 U.S. at 588, 126 S.Ct. 2159. Hudson argued the entry violated his Fourth Amendment rights and that the seized evidence must be suppressed. *Id.* The Court disagreed, holding that the knock-and-announce violation was too attenuated from the seizure of evidence to justify suppression. *Id.* at 594, 126 S.Ct. 2159. There was a valid search warrant, and the challenged entry was merely an "illegal *manner* of entry" or a "preliminary misstep," distinct from the subsequent seizure of evidence. *Id.* at 592, 126 S.Ct. 2159. The Court explained:

> Until a valid warrant has issued, citizens are entitled to shield "their persons, houses, papers, and effects," from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement. The interests protected by the knock-and-announce requirement are quite different-and do not include the shielding of potential evidence from the government's eyes.

*Id.* at 593, 126 S.Ct. 2159.

¶12 As in *Hudson*, officers here possessed a valid search warrant for defendant's home, and their manner of entry had nothing to do with the subsequent seizure of drugs and drug paraphernalia.[2] The evidence was obtained based on a valid search warrant, not an illegal entry. Thus, unless the Arizona Constitution mandates a different result, the superior court correctly denied defendant's suppression motion.

¶13 Turning to the state constitution, our supreme court has determined that Article 2, Section 8, may provide broader protection than the Fourth Amendment in certain contexts. *See, e.g., State v. Martin*, 139 Ariz.

---

1. In addition to arguing that *Hudson* applies, the State asks us to affirm because: (1) the magistrate intended to authorize an unannounced entry, and the omission of such language in the warrant was a mere "technical error"; and (2) Detective D. had a good faith belief he was authorized to make an unannounced entry. As the State acknowledges, the superior court ultimately decided the suppression issue based solely on its interpretation of *Hudson*. Because we conclude the court appropriately relied on *Hud-

*son,* we do not reach the State's alternative arguments.

2. Unless, of course, one assumes defendant could have hidden or destroyed the evidence had knock-and-announce protocol been followed. Even making such an assumption, as we discuss *infra*, the interests protected by the knock-and-announce rule do not extend to a homeowner's destruction of contraband.

466, 473, 679 P.2d 489, 496 (1984) (holding that the Arizona Constitution is "even more explicit" than the Fourth Amendment in safeguarding the home); *State v. Bolt*, 142 Ariz. 260, 264–65, 689 P.2d 519, 523–24 (1984) ("While Arizona's constitutional provisions generally were intended to incorporate the federal protections ... they are specific in preserving the sanctity of homes and in creating a right of privacy.") (citations omitted); *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986) ("The Arizona Constitution is even more explicit than its federal counterpart in safeguarding the fundamental liberty of Arizona citizens.") (citation omitted). All of these cases, however, involved *warrantless* searches of homes. As this Court previously observed, "[E]xcept in cases involving 'unlawful' warrantless home entries, Arizona courts have not yet applied Article 2, Section 8, to grant broader protections against search and seizure than those available under the federal constitution." *State v. Juarez*, 203 Ariz. 441, 444–45, ¶ 14, 55 P.3d 784, 787–88 (App.2002) (citations omitted).

 ¶ 14 The distinction between a warrantless home search and a search conducted pursuant to a valid warrant is constitutionally significant. Searches and seizures inside a home without a warrant are presumptively unreasonable. *State v. Martin*, 139 Ariz. 466, 474, 679 P.2d 489, 497 (1984) (citation omitted). Indeed, unlawful entry of homes was "the chief evil which the Fourth Amendment was designed to prevent." *Ault*, 150 Ariz. at 463, 724 P.2d at 549 (citations omitted). On the other hand, a "homeowner has no right to prevent a law enforcement officer with a valid warrant from entering his home." *State v. Sanchez*, 128 Ariz. 525, 528, 627 P.2d 676, 679 (1981) (citations omitted). *See also State v. Clary*, 196 Ariz. 610, 613, ¶ 16, 2 P.3d 1255, 1258 (App.2000) ("A search warrant is a court order that authorizes police to intrude into an individual's privacy."). A determination that the knock-and-an-

nounce rule "has never protected ... one's interest in preventing the government from seeing or taking evidence described in a warrant," *Hudson*, 547 U.S. at 594, 126 S.Ct. 2159, is wholly consistent with Arizona's constitution and our appellate precedents. *See also Sanchez*, 128 Ariz. at 528, 627 P.2d at 679 (discussing the protections offered by the knock-and-announce rule, including preventing "violent confrontations which may occur upon unannounced intrusions," the "unexpected exposure of occupants' private activities," and the "destruction of property resulting from forced entry.") (citations omitted).

¶ 15 Finally, *State v. Nordstrom*, 200 Ariz. 229, 25 P.3d 717 (2001), does not compel a contrary conclusion. In *Nordstrom*, the Arizona Supreme Court stated:

Absent exigent circumstances, the Fourth Amendment requires police officers to knock and announce their presence before entering a home to serve a search warrant. Arizona Revised Statutes (A.R.S.) section 13–3916 codifies this constitutional requirement: "An officer may break into a building ... to execute the warrant when ... [a]fter notice of the officer's authority and purpose, the officer receives no response within a reasonable time ... [or] the officer is refused admittance." If an officer violates this requirement, evidence obtained in the search is inadmissible.

200 Ariz. at 245–46, ¶ 45, 25 P.3d at 733–34 (internal citations omitted). *Nordstrom* neither cited nor relied on the Arizona Constitution. Its holding was based on state statutes and the federal constitution.

¶ 16 Since *Nordstrom*, the United States Supreme Court decided *Hudson*, which put to rest the notion that a knock-and-announce violation requires suppression under the Fourth Amendment. We are bound by decisions of the United States Supreme Court that interpret the federal constitution.[3] *State v. Sherrick*, 98 Ariz. 46, 52, 402 P.2d 1, 5 (1965). Additionally, A.R.S. § 13–3925

---

3. Although not dispositive of the legal issue before us, our supreme court has commented on the desirability of treating suppression issues consistently under the federal and state constitutions, stating:

It is poor judicial policy for rules governing the suppression of evidence to differ depending upon whether the defendant is arrested by

federal or state officers. Therefore, even though on occasion we may not agree with the parameters of the exclusionary rule as defined by the United States Supreme Court, we propose so long as possible, to keep the Arizona exclusionary rule uniform with the federal. We therefore do not propose to make a sepa-

(2001) was amended in 2000 to read: "Any evidence that is seized pursuant to a search warrant shall not be suppressed as a result of a violation of this chapter except as required by the United States Constitution and the constitution of this state." For the reasons previously stated, we conclude that the seizure of evidence in this case violated neither the federal nor state constitution.

## CONCLUSION

¶ 17 The judgment of the superior court is affirmed.

rate exclusionary rule analysis as a matter of state law in each search and seizure case.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and LAWRENCE F. WINTHROP, Judge.

*Bolt*, 142 Ariz. at 269, 689 P.2d at 528.