DISTRICT OF COLUMBIA, Appellant,

v.

Barbara MANCOUSO and
Dion Wills, Appellees.

Nos. 00–CT–544, 00–CT–545.

District of Columbia Court of Appeals.

Argued Jan. 25, 2001.
Decided Aug. 2, 2001.

Rosalyn Calbert Groce, Supervisory Corporation Counsel with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

W. Bronson Howell, appointed by the court, for appellee Mancouso.

Lloyd A. Malech, Washington, DC, appointed by the court, for appellee Wills.

Before STEADMAN, GLICKMAN and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge:

The police, executing a search warrant, entered the house where appellees reside without complying with the "knock and announce" requirement of D.C.Code § 23–524(a) (1996 Repl.). Neither appellee was inside the house at the time but both were in the immediate vicinity and within "earshot" and "eyeshot," had the police complied with the statute. The principal issue before us in this pretrial government appeal is whether the trial court was correct in ruling that the appellees had standing to seek the suppression of the evidence seized in the house. Surprisingly, this appears to be an issue of nationwide first impression. We affirm the trial court's grant of the suppression motion.

## I.

On June 18, 1999, police went to the appellees' residence at 130 Thomas Street, N.W., to execute a search warrant based on an undercover agent's recent purchase of drugs at that address.[1] Officers entered the house through the front door as another officer stood watch by the back door. A third resident of the house, Dennis Sallas, was seated on the front steps of the house and testified that he saw the police go directly into the house through the closed but unlocked front door without pausing to knock or announce. At that time, appellee Wills was washing his car near the house, as an assisting officer observed, and appellee Mancouso was directly across the street. Wills and Mancouso were arrested when police recovered an unregistered pistol and related ammunition inside the house.[2]

The trial court credited Sallas's version of the basic events, finding: "There was no knock and announce, [ ] they just walked in the door. . . . We just know they didn't stop to knock and they just walked in."[3]

---

1. We present the facts, which in some respects are not entirely clear, in the light most favorable to sustaining the ruling of the trial court, as we are obliged to do. *United States v. Turner*, 761 A.2d 845, 850 (D.C.2000).

2. Appellees were subsequently charged with misdemeanors under D.C.Code § 6–2311 (persons permitted to possess ammunition), – 2361 (registration requirements), and –2376 (penalties) (1996 Repl. & March 2000 Supp.).

3. No member of the team actually effectuating the entry and search testified at the pretrial hearing, and the testimony of the officer

The trial court also found that both appellants were within earshot and eyeshot of the front door and that "they were in a position to respond if they had heard the police knocking and announcing." Accordingly, while recognizing the absence of authority squarely on point one way or the other, the court concluded that in the circumstances "there is a purpose in having the knock and announce apply" to appellees. Hence, they had standing to raise the motion to suppress, which the court granted.

## II.

█ In executing search warrants, District police must comply with D.C.Code § 23–524(a), which states: "An officer executing a warrant directing a search of a dwelling house or other building or a vehicle shall execute such warrant in accordance with section 3109 of Title 18, United States Code." That federal statute provides that "[t]he officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, if, after notice of his authority and purpose he is refused admittance."[4] The requirement embodied in these provisions is often referred to as the "knock-and-announce" rule or principle. *See, e.g., Coleman v. United States*, 728 A.2d 1230

(D.C.1999) *cert. denied* 528 U.S. 909, 120 S.Ct. 256, 145 L.Ed.2d 215 (1999) and cases cited.[5]

█ The Supreme Court has indicated that the origin of the knock-and-announce rule may be traced as far back as a statute enacted in 1275, which itself was "but an affirmance of the common law," *Wilson v. Arkansas*, 514 U.S. 927, 932 n. 2, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (citations omitted); *see also Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). This common-law "knock-and-announce" principle extant at the time of the framing of the Constitution "forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson*, 514 U.S. at 929, 115 S.Ct. 1914. It has become established in our jurisdiction that evidence obtained where the statute has not been complied with and where no exception applies may be suppressed on motion by a defendant with standing to challenge the violation.[6] *West v. United States*, 710 A.2d 866 (D.C.1998); *Griffin v. United States*, 618 A.2d 114 (D.C.1992). *See Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

█ The standing of appellees is the key issue here. The government argues

---

who was posted and remained in front of the house was at best ambiguous as to what the entry team did or did not do. On the issue whether anyone was actually inside the premises at the time of entry, the trial court observed that "there's no record that there were or weren't people in the house. I have to assume there were people in the house ... no evidence that there wasn't [anyone in the house]." As will be noted, our affirmance does not necessarily rest on that factual assumption.

4. D.C.Code § 33–565(g) contains almost identical language dealing with the execution of search warrants relating to drug offenses. The parties in the appeal before us address

solely D.C.Code § 23–524(a) and its incorporation of the federal statute.

5. An entry even through a closed but unlocked door is considered a breaking and hence subject to the statute. *Coleman*, 728 A.2d at 1233 (citing *Sabbath v. United States*, 391 U.S. at 589–90, 88 S.Ct. 1755). *See also Belton v. United States*, 647 A.2d 66 (D.C. 1994).

6. The breadth of this assertion may be subject to qualification, depending for example on the nature of the violation and other facts and circumstances not present here. In both the cited cases, the entry was made under a valid search warrant.

that since the appellees were not actually inside the house at the time of entry, they have no standing to complain about any violation of the knock and announce statute. It has indeed been suggested that police are not required to comply with the knock and announce statute where doing so would be a "useless gesture." *Miller v. United States, supra,* 357 U.S. at 310, 78 S.Ct. 1190. This principle has been applied in cases where the house was empty at the time of entry. *United States v. Hawkins,* 243 F.Supp. 429, 432 (E.D.Tenn. 1965); *New Jersey v. Bilancio,* 318 N.J.Super. 408, 724 A.2d 278, 284 (App. 1999); *Wisconsin v. Moslavac,* 230 Wis.2d 338, 602 N.W.2d 150, 154 (App.1999); *Van Allen v. Florida,* 454 So.2d 49, 51 (Fla. App. 4th Dist. 1984). Likewise, a resident absent from his home at the time of entry has been held to have no right to complain about the failure to comply with the statute. *See Mena v. Simi Valley,* 226 F.3d 1031, 1035 n. 2 (9th Cir.2000); *United States v. Valencia–Roldan,* 893 F.2d 1080, 1081 n. 1 (9th Cir.1990); *State v. Johnson,* 716 P.2d 1006, 1010 (Alaska Ct.App.1986); *State v. Papineau,* 146 Ariz. 272, 705 P.2d 949 (Ct.App.1985); *Righter v. Delaware,* 704 A.2d 262 (Del.1997).[7] All of these cases, however, involve owners or residents who were far distant from the premises at the time of entry. In contrast, appellees here were within earshot and eyeshot of their home at the time of the entry and in a position to respond, although not physically within the dwelling itself.

We have found no cases involving this precise situation. We therefore turn to an examination of the purposes underlying the knock and announce principle to determine whether any protected interests of appellees fall within those purposes.

■ In our case law, we have recognized at least three purposes that underlie the knock-and-announce requirement:

(1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbolizes the respect for individual privacy summarized in the adage that "a man's [or woman's] house is his [or her] castle."[8]

*Poole v. United States,* 630 A.2d 1109, 1116 (D.C.1993) (quoting *United States v. Bustamante–Gamez,* 488 F.2d 4, 9 (9th Cir. 1973)). How then do these purposes apply to the appellees here?

■ It is clear that appellees in the abstract have a privacy interest in their dwelling that in some circumstances extends beyond their mere physical presence at home. "It has long been true and is still so under the expectation-of-privacy test that an individual with the present possessory interest in the premises

---

7. In each instance, it appears that the home was occupied by others at the time of the police entry.

8. A treatise writer has summarized the concept as "[protecting] privacy by minimizing the chance of entry of the wrong premises and subjecting the innocent persons to 'the shock, fright or embarrassment attendant upon an unannounced police intrusion,' and even where there is no mistake, allowing those within a brief time to prepare for the police entry." 2 LeFave et. al., Criminal Proce-

dure § 3.4(h) (citations omitted) (3d ed.1984). *See also, e.g., State v. Johnson, supra,* 716 P.2d 1006, 1010 ("'the only right of privacy protected by the announcement requirements is the right to know who is entering, why he is entering, and a few seconds to prepare for his entry") (quoting *State v. Valentine,* 264 Or. 54, 504 P.2d 84 (1972)); *State v. Sanchez,* 128 Ariz. 525, 627 P.2d 676, 679 (1981) ("the right which knock and announce rules provide occupants is the right to be warned that their privacy is about to be legally invaded").

searched has standing to challenge that search even though he was not present when the search was made." 3 LEFAVE § 9.1(b) at 320–21(1984) (citing cases).[9] In the knock-and-announce context, the Supreme Court observed that "Congress, codifying a tradition embedded in Anglo American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house." *Miller v. United States, supra,* 357 U.S. at 313, 78 S.Ct. 1190. *See also Mazepink v. Arkansas,* 336 Ark. 171, 987 S.W.2d 648 (1999), *cert. denied* 528 U.S. 927, 120 S.Ct. 321, 145 L.Ed.2d 250 (1999) (resident not home at time of illegal entry, which caused property damage, had standing due to his legitimate expectation of privacy in the place searched and items seized).

■ Where the police hold a valid warrant, the classic privacy interest of the resident is going to be validly invaded in any event. We do not think this is conclusive. "The protection of a citizen's home from forced entry is at the core of the values secured by the Fourth Amendment and by the knock-and-announce statute." *West v. United States,* 710 A.2d 866, 870 (D.C.1998). As already indicated, see note 5, *supra,* even entry through a closed and unlocked door is deemed a breaking. The statute requires not only that the police knock and announce, but that they be "refused admittance." The resident within earshot and eyeshot can grant admittance almost as readily as (if not in some circumstances more readily) as someone within the house. In *Poole, supra,* discussing the knock-and-announce rule, we took note of

the adage "a man's [or woman's] house is his [or her] castle." 630 A.2d at 1116. However it may be when the resident is far from that castle, the respect for its integrity embodied in the knock-and-announce rule extends, we believe, at least to the circumstance where the resident, being within earshot, could have effectuated a peaceful entrance had the statute been complied with and where, being within eyeshot, may witness the violation as it takes place.

The prevention of violence is also served by giving an owner within earshot and eyeshot notice of the police arrival. In *United States v. Covington,* 385 A.2d 164 (D.C.1978), we noted how the knock-and-announce statute safeguards against the possibility that police officers may be mistaken for prowlers or unlawful intruders. While the danger of being mistaken for a prowler is greater when a suspect is inside the house and has less chance to observe the intruder as he enters, there clearly remains the threat of violence where the owner is in a position to hear and see the unannounced entry into his own home and take immediate aggressive action, perhaps unaware that police are involved. Likewise, a resident within earshot and eyeshot can by a prompt response to police complying with the knock-and-announce rule prevent unnecessary damage to his property.

■ We recognize that in the instant case, neither violence nor property damage actually occurred and in that regard these particular appellees cannot claim an actual infringement of those interests. Indeed, it may be that these interests, standing

---

9. *See, e.g., Alderman v. United States,* 394 U.S. 165, 175 & 178–89, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (stating that in general under the Fourth Amendment a resident has standing to complain against the United States in both the case of electronic surveillance accomplished by physical invasion and that accomplished without a technical trespass, whether or not he was at home or participated in the conversation because "officialdom invades an area in which the homeowner has the right to expect privacy for himself, his family, and his invitees, and the right to object to the use against him of the fruits of that invasion, not because the rights of others have been violated, but because his own were").

alone, may not warrant the constitutional protection of suppression. We are satisfied, however, that when coupled with the privacy interest, the totality of the protection afforded appellees by the knock-and-announce principle is sufficient to warrant both standing and suppression in the circumstances here. We are strengthened in this view by our own court's admonition, based on Supreme Court precedent, that knock-and-announce statutes "should be accorded a generous construction rather than a 'grudging' one." *Griffin v. United States*, 618 A.2d 114, 119 (D.C.1992) (citing *Miller, supra*, 357 U.S. at 313, 78 S.Ct. 1190).[10]

Accordingly, the order of suppression of evidence by the trial court from which the government has appealed is

*Affirmed.*

---

10. The government suggests that even if appellees had standing, the "inevitable discovery" doctrine, *see Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and "independent source" doctrine, *see Murray v. United States*, 487 U.S. 533, 536–37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), required denial of the motion to suppress. Application of either doctrine in the precise circumstances here would nullify our prior suppression holdings in *West* and *Griffin* cited above, which also involved valid search warrants, and we as a panel deem ourselves bound by them. *See also United States v. Dice*, 200 F.3d 978, 985–86 (6th Cir.2000).