UNITED STATES, Appellant,

v.

Anthony OWENS, Appellee.

No. 00–CO–1309.

District of Columbia Court of Appeals.

Argued Oct. 24, 2001.
Decided Jan. 10, 2002.

Valinda Jones, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Glenn S. Leon, Assistant United States Attorneys, were on the brief, for appellant.

Jerry Ray Smith, for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

This government appeal concerns an application of the general knock-and-announce statute, D.C.Code § 23–524(a) (2001). A police officer, part of a team executing a search warrant at an apartment, waited forty-five seconds after first identifying his presence before forcibly entering the apartment. The trial court nonetheless suppressed evidence seized during the search because only after thirty seconds of that time had elapsed did the officer announce the authority and purpose for the police being there, *i.e.*, the search warrant—the remaining fifteen seconds being too short, in the judge's view, to amount to a constructive refusal of admittance. We conclude that in the total cir-

cumstances of the case, *including* the antecedent thirty seconds during which the presumed occupants learned the identity of the person knocking, the police reasonably believed that they had been denied admittance to the dwelling and thus were entitled to use force to enter.

## I. *The Suppression Hearing*

### A. *The Evidence*

On the basis of the evidence seized, defendant Owens was indicted for several weapons offenses. At the hearing on his motion to suppress, the undisputed evidence was that on December 28, 1999, at approximately 5:00 p.m., Metropolitan Police (MPD) officers executed a search warrant at 44 Galveston Street, S.W., Apartment 101. The warrant authorized a search of the apartment for "illegal firearms" including "a nine millimeter firearm, .38 revolver, other ammunition [and] other firearms," as well as documents, paraphernalia, and "other indicia of illegal possession of firearms." The supporting affidavit stated that within the previous week a reliable individual had seen the named weapons in the apartment, and had also observed marijuana laced with PCP (or "Boat") stored in a freezer and being sold from the apartment. Additionally, the affiant, Detective Angelo Hicks of the MPD, who worked at the apartment complex part-time as a security guard, knew that an Andre Townsend resided in Apartment 101 with his girlfriend and four children. Hicks had personally seen "numerous people walk into apartment # 101 [and] stay ... for less than a minute and then leave"; he had received numerous complaints from residents of the building "about near-constant foot traffic into 44 Galveston Street, and specifically into apartment # 101"; and within the past month he had "personally smelled marijuana emanating from apartment # 101."

Hicks testified at the hearing that he knew Townsend to be the person living in Apartment 101, a one- or two-bedroom apartment.[1] Townsend and he were acquainted because Hicks would stop and talk with him on occasion and Townsend would "share[ ] ... family information with me"; they had "a low rapport going ... by me working there and him living there." Townsend knew Hicks by name and knew that he was a police officer.

When the warrant team arrived at Apartment 101, Hicks knocked on the door and said in a loud voice, "Andre, it's me, Officer Hicks." He did not immediately order Townsend to open the door because he wanted to present "a friendly manner so [Townsend] could come to the door[,] ... look out the peephole and see that it was me since he knows who I am and I know who he is." As a result Townsend would have "time ... to be able to cooperate and open the door without us having to use forced entry." Hicks, presumably in his capacity as security guard, had knocked on Townsend's door "[m]aybe on three other occasions" in the past to tell the occupants "that the marijuana smell was coming through the door." This time, Hicks knocked three times over a period of thirty seconds, each time saying in a loud voice, "Andre, it's me, Officer Hicks." During the thirty seconds, "there was no response [of] anyone coming to the door or anything." Hicks then announced his "authority and the purpose and intent for us being there, [saying ']police, we have a search warrant[.']" After "approximately 15 seconds" during which they heard nothing to suggest someone was coming to the

---

1. Although Hicks "believe[d]" the apartment had one bedroom, papers filed by the government acknowledged that it could have had two.

door, the team rammed the door open and entered the apartment.

Sergeant Brennan, also with the warrant team, testified that on entering he saw Owens being detained in a corner of the apartment and saw an Eddie Bauer coat less than a foot away from Owens on the floor. (He was later told that the jacket had been removed from appellee.) When he picked it up and noticed that it was "heavier than a normal coat," he squeezed the pocket and felt a gun. He looked inside the pocket and found a handgun. Ammunition was found elsewhere in the apartment. Besides Owens, Townsend and five other persons were in the apartment at the time of the entry.

### B. *The Trial Court's Ruling*

Owens argued that the police had failed to comply with the knock-and-announce statute and also had violated his Fourth Amendment rights by seizing him and frisking his coat without adequate particularized suspicion once they entered the apartment. The trial judge rejected the latter argument but agreed that the police had violated the statute in forcibly entering. He credited the testimony of Detective Hicks (and of Officer Brennan), but concluded that the fifteen seconds the police waited after announcing their authority and purpose "was not enough time ... [for the] police to reasonably conclude that the door would not be opened," as required by the statute. Although just prior to that time Hicks had made "a 30-second informal attempt" to enter without force, the judge did not believe this "warrant[ed] the shortening of the time period which the police would need after properly announcing their purpose and authority," since it

did not contribute to "put[ting] the people [inside] on notice that if they [did] not comply a forced entry [would] occur." Thus, in the judge's view, the issue "[came] down to whether ... [after] knocking and announcing[,] 15 seconds is enough." And particularly given that this court in *Griffin v. United States*, 618 A.2d 114 (D.C.1992), had "indicated [that in] a nighttime situation, 30 seconds is insufficient absent exigent circumstances," the judge concluded that the wait of fifteen seconds "absent exigent circumstances" was not long enough to allow a reasonable conclusion that the police were being refused entry.

### II. *Discussion*

"[T]he common-law principle of announcement is ... an element of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). As relevant to this case, the requirement of announcement is embodied in D.C.Code § 23–524(a), which in turn requires police to execute search warrants in conformity with 18 U.S.C. § 3109, as follows:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.[2]

In keeping with the language of the statute and case law generally, this court has recognized two situations in which the police need not wait for an actual reply [to the notice] before attempting a

---

**2.** An analogous announcement provision, applicable to execution of search warrants for controlled substances, is found in D.C.Code § 48–921.02(g) (2001), formerly D.C.Code § 33–565(g). As the search warrant herein

was for weapons (although the affidavit provided reason to believe marijuana and PCP would also be found in the apartment), the relevant knock-and-announce statute is § 23–524(a).

forced entry: (1) where the police may reasonably infer from the actions or inactions of the occupants that they have been constructively refused admittance; and (2) where the police are confronted with exigent circumstances, such as the imminent destruction of evidence, or some danger to the entering officers. *Poole v. United States*, 630 A.2d 1109, 1116 (D.C.1993) (citations and internal quotation marks omitted). Although this court defers to the trial court's findings of fact (unless clearly erroneous) and reasonable inferences therefrom, "we review *de novo* the ultimate legal determination as to whether these facts and inferences support a conclusion that the police did [or did] not violate the statute." *Id.* at 1117 (citing *Griffin v. United States*, 618 A.2d at 117).

■ In challenging the trial court's ruling, the government asserts both justifications—constructive refusal and exigent circumstances—for the lawfulness of the entry in this case. We find it unnecessary to consider application of the exigent circumstances exception, though see p. 576, *infra*, because we hold that in the circumstances, the police "reasonably infer[red] from the ... inaction of the occupants that

they [had], in effect, been refused admittance." *Griffin*, 618 A.2d at 126 (quoting *United States v. Bonner*, 277 U.S.App. D.C. 271, 273, 874 F.2d 822, 824 (1989)).[3]

■ "In considering a claim of constructive refusal, the courts engage in 'a highly contextual analysis, examining all the circumstances of the case,' to determine whether the police inference was reasonable." *Id.* at 120 (quoting *Bonner*). The government argues that the trial judge erred principally in disregarding, as a practical matter, the thirty seconds after Detective Hicks identified himself but before he announced that he had a search warrant. The judge, we recall, concluded that the issue came down to whether the fifteen seconds after the full knock and announcement of purpose was enough to support a reasonable belief of refused entry. The government cites cases for the conclusion that delay of this length before executing a daytime search for weapons is indeed enough,[4] but it does not ask us to decide the case on that basis, nor do we. Rather, it argues that the preceding thirty seconds during which the presumed occu-

3. The government first argues that the manner of entry did not violate any protectible statutory or Fourth Amendment interest of Owens' because he was not shown to have any contact with the apartment other than his mere presence there at the time of the entry. In this regard the parties dispute the significance of the fact that certain papers belonging to Owens were apparently found in the apartment, and whether that sufficed to give him "an expectation of privacy in the place searched." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). Owens also contends that the statute gave him broader "standing" than the Fourth Amendment because of the particular interests it is designed to protect, citing *United States v. Lockett*, 919 F.2d 585, 588 (9th Cir.1990). In view of our disposition of the appeal, we do not consider these issues. Standing, as a proxy for whether one may assert the protec-

tions of either the statute or the Fourth Amendment, does not implicate the subject matter jurisdiction of the court, *see, e.g., United States v. Marchant*, 55 F.3d 509, 512 (10th Cir.1995); *United States v. Lochan*, 674 F.2d 960, 963 n. 4 (1st Cir.1982), and even where jurisdiction is at issue this court may bypass a complex question of jurisdiction if the merits are "insubstantial." *Childs v. United States*, 760 A.2d 614, 617 (D.C.2000). We need not hold the merits of the suppression ruling here to be insubstantial to conclude that, in the present context, we may avoid the issues of standing and decide the case on the merits.

4. *See United States v. Knapp*, 1 F.3d 1026, 1031 (10th Cir.1993); *United States v. Spriggs*, 302 U.S.App. D.C. 54, 56, 996 F.2d 320, 322 (1993); *see also United States v. Jones*, 133 F.3d 358, 361–62 (5th Cir.1998) (citing cases).

pants learned that a police officer whom they knew—not unlawful intruders or even a stranger—was requesting admittance furnished decisive context for the reasonableness of the succeeding fifteen-second wait. We agree.

■ At least three purposes underlie the knock-and-announce requirement:

> (1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbolizes the respect for individual privacy summarized in the adage that "a man's [or woman's] house is his [or her] castle."

*Poole,* 630 A.2d at 1116 (quoting *United States v. Bustamante–Gamez,* 488 F.2d 4, 9 (9th Cir.1973)). Important among these, as our cases have explained, is that "the knock-and-announce statute safeguards against the possibility that police officers may be mistaken for prowlers or unlawful intruders." *District of Columbia v. Mancouso,* 778 A.2d 270, 274 (D.C.2001) (citing *United States v. Covington,* 385 A.2d 164 (D.C.1978)). In *Poole,* we quoted in this regard the California Supreme Court's observation that "[o]ne of the primary purposes[,] . . . in addition to the protection of individual privacy, is to prevent possible violent responses that might be aroused in a startled and fearful householder suddenly confronted with unknown persons breaking into his . . . home for unannounced reasons." 630 A.2d at 1120 (quoting *People v. Dumas,* 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208, 1213 (1973)). *See also Mancouso,* 778 A.2d at 273 n. 8 (quoting 2 LaFave et al., Criminal Procedure § 3.4(h) (3d ed.1984) (a purpose is to minimize the chance of "subjecting the innocent persons [present] to 'the shock, fright or embarrassment attendant upon an unannounced police intrusion'" (citation

omitted))); *United States v. Cantu,* 230 F.3d 148, 152 (5th Cir.2000) ("[A]llowing the police to attempt entry into a home before announcing their presence heightens the possibility that the occupants of a house will react violently against the unknown aggressor").

■ Before Detective Hicks knocked a fourth time, declared he had a search warrant, and waited fifteen seconds he had already made clear to the presumed occupant (Townsend) who he was. Over the course of thirty seconds he knocked three times and stated loudly each time, "Andre, it's me, Officer Hicks." Hicks thus reasonably believed he had conveyed to the occupants that he was not an unknown person but a police officer, and to Townsend in particular that he was someone known to him personally. The psychological uncertainty to the occupants— the shock and fear—of not knowing who was seeking entry and whether the person(s) could be safely admitted was therefore greatly dispelled by Hicks's prior actions. To this it is not an answer, as Owens contends, that the occupants did not know Hicks was demanding entry and under what authority, thus whether they were *obliged* to respond. The point is that a key reason why "[a] significant time lapse is required to justify a conclusion that admittance was refused," *Griffin,* 618 A.2d at 125 (citation and internal quotation marks omitted), is because innocent persons confronted by a knock cannot be expected to turn over in their minds instantaneously the considerations dictating response or no-response—including who is knocking and whether the fear of opening the door to an unknown person is justified. In this case, that condition of uncertainty and fright was largely dissipated by the time Hicks stated his reason for wanting admittance.

We therefore disagree with the trial judge that the fifteen seconds following the announcement of authority and purpose had to stand on its own footing without regard to Hick's actions and their reasonable effect on the occupants beforehand. As part of the "highly contextual analysis," *Griffin*, 618 A.2d at 120, into the reasonableness of the police' belief that admittance was being withheld, those actions were important, directed as they were—indeed, as Hicks intended them—to the core statutory concern of relieving apprehension of the unknown by innocent residents and the consequent potential for violence. So we must view the succeeding fifteen-second wait in that context, and in doing so we are convinced that it was sufficient to support the officers' belief.

The entry, first of all, was being sought in the late afternoon when the occupants could be expected to be up and about and able to respond with reasonable alacrity. The case is therefore unlike *Griffin*, on which the trial judge substantially relied, in which we held "that a thirty-second delay between a police announcement and a forced entry into a home at 1:40 a.m. was too short for the police reasonably to conclude that they had been constructively refused admittance." *Poole*, 630 A.2d at 1117. In *Griffin*, before discussing the question of "how much time is reasonable," 618 A.2d at 122, we remarked upon both the severe invasion of privacy represented by a nighttime intrusion into the home and the unreasonableness of expecting a prompt response by residents at a time when "most people are in bed, and many are asleep." *Id.* at 121; *see also United States v. Jerez*, 108 F.3d 684, 690 (7th Cir.1997) ("[T]he special vulnerability of the individual awakened at the privacy of

his place of repose during the nighttime hours was recognized in the common law that antedates our separation from England."). *Griffin* cannot be extended broadly beyond its context, as Owens would have us do, since both law and common sense suggest the importance of the difference between daytime and nocturnal demands for entry. *See, e.g., United States v. Jenkins*, 175 F.3d 1208, 1215 (10th Cir. 1999) ("[I]f a warrant is executed in the middle of the day the amount of time the officers need to wait before entering is generally reduced."); *see also* Super. Ct. Crim. R. 41(c) (second paragraph) (establishing special requirements for warrants permitting entry "at any hour of the day or night").

Second, "the size of the premises to be searched" is a relevant factor. *Id.* at 1214; *see also United States v. Goodson*, 165 F.3d 610, 614 (8th Cir.1999). Hicks, from his familiarity with the Wingate apartment complex, believed Townsend's apartment was a one-bedroom unit, although it may have had two. See note 1, *supra.* In that setting it was reasonable for him to infer that his demand for admittance had been heard and that someone complying would do so, if not by opening the door, at least by vocally signaling the intent to do so within fifteen seconds. Instead he heard only silence, from occupants who he reasonably believed had been aware of his presence for a substantially greater length of time. *See United States v. Ramos*, 923 F.2d 1346, 1356 (9th Cir. 1991) ("[a] failure to answer a knock and announcement has long been equated with a refusal to admit the search party and a justification for forcible entry"; citing holdings that a "refusal to admit may be implied by silence").[5]

---

5. *Ramos* was overruled on unrelated grounds in *United States v. Ruiz*, 257 F.3d 1030 (9th Cir.2001).

■ Lastly, in "a danger-fraught situation, the officers may quite reasonably infer refusal more readily than under other circumstances." *Bonner*, 277 U.S.App. D.C. at 273, 874 F.2d at 822. Besides having grounds to believe an active drug distribution business was being operated from Apartment 101, *see Florida v. J.L.*, 529 U.S. 266, 273, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) ("Several Courts of Appeals have held it *per se* foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well."),[6] the police had specific reason to believe that firearms including a nine millimeter were being kept on the premises within ready access (the informant had seen them there). Although this "exigency" alone would not excuse a failure to knock and announce, *see Poole*, 630 A.2d at 1120–22, it supported a reasonable fear by the police that waiting too long after knocking and declaring their purpose would expose them to undue personal danger. *Cf.* 2 LaFave, et al. § 4.8, at 610 (noting reasonableness of view that "in assessing a relatively short period of delay it is permissible to take account of circumstances which at least come close, under the ... danger-to-person exception, to justifying entry without notice at all").

    *     *     *     *     *     *

■ As this opinion should have made clear, a wait of fifteen seconds after announcement of authority and purpose is not *per se* or even presumptively evidence that the police have been constructively refused admittance. Borrowing from another court, we agree there can be no "bright-line rule ... that waiting [fifteen seconds or less] is *per se* unreasonable while waiting [that length of time or more] is *per se* reasonable under the Fourth Amendment." *United States v. Spikes*, 158 F.3d 913, 926 (6th Cir.1998). "The Fourth Amendment's 'knock and announce' principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch." *Id.* In this case, the facts taken altogether convince us that the police reasonably inferred they had been refused entry by persons who knew of Detective Hicks's presence and identity for fully three-quarters of a minute, and knew of their purpose in demanding entry for a third of that time.[7]

*Reversed.*

RUIZ, Associate Judge, concurring:

The requirements and purpose of the "knock and announce" statute are satisfied if, after knocking and announcing, *and* al-

---

**6.** *See also Richards v. Wisconsin*, 520 U.S. 385, 391, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) ("It is indisputable that felony drug investigations may frequently involve [a threat of physical violence].").

**7.** As an alternative ground for the suppression order, *see Young v. United States*, 670 A.2d 903, 906 (D.C.1996), Owens argues that the police had no basis for patting down the jacket they removed from him after entering. To the contrary, the warrant authorized a search for firearms and ammunition, including two guns identified by type that were easily capable of being concealed in a jacket pocket. *See generally United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (discussing scope of lawful search of

fixed premises). The warrant was supported by information that the occupants, besides keeping guns, were routinely selling marijuana and PCP from the apartment. Especially once the police were refused admittance, they reasonably suspected—if not believed—that anyone inside the apartment was not a casual visitor but was associated with the drugs and firearms. At a minimum this justified the frisk of Owens' jacket, resulting in the seizure of the gun. *See Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (police officer "may conduct a patdown to find weapons that he reasonably ... suspects are then in the possession of the person ... accosted").

lowing sufficient time for an occupant of the residence to open the door, police officers seeking to execute a search warrant reasonably believe that they have been denied entry. *See* D.C.Code § 23–524(a) (2001) (incorporating requirements of 18 U.S.C. § 3109 that an officer be "refused admittance" after giving notice of authority and purpose). I agree with the majority's analysis that the police could reasonably come to that conclusion on the facts of this case.

I also agree with the majority that in this case the police did not have the requisite "concrete, particularized evidence" of the presence of weapons and a "realistic possibility" that they may have been used against them to constitute exigent circumstances excusing compliance with the statute. *Poole v. United States,* 630 A.2d 1109, 1118 (D.C.1993). We have held that the presence of weapons alone is insufficient, *see id.,* as it would exempt an entire category of search warrants—those seeking weapons—from the statutory requirement. *See Moore v. United States,* 748 A.2d 915, 918 (D.C.2000); *see also United States v. Bonner,* 277 U.S.App. D.C. 271, 281 n. 3, 874 F.2d 822, 831 n. 3 (1989) (Wald, J., dissenting) (noting that in enacting 18 U.S.C. § 3109 Congress was "acutely aware" that it applied to search warrants for weapons).

The majority opines, however, that the suspicion that there were weapons in the house—though insufficient by itself to excuse compliance with the statute—nonetheless could have been taken into account by the police in shortening the time they needed to wait before breaking down the door. I disagree that this is relevant to the statute's requirements to knock, announce and wait. The manner in which

the police have announced their presence and purpose, and the passage of enough time so that the occupants can hear and respond to the summons, are relevant to whether the police have constructively been denied entry, thereby satisfying the statute. The presence of weapons, though surely important to the question of police safety, sheds no light on whether there has been a denial of entry. To mix the two confuses distinct inquiries and could result in half measures for occupants and half measures for police.

Our legal rulings should place incentives consistent with the important Fourth Amendment rights of the individual that Congress intended to safeguard by requiring that officers knock, announce and wait before breaking the door. Thus, we require "concrete, particularized evidence" of a real safety risk or other exigent circumstance to excuse compliance with the statute. Inclusion of a generalized safety concern in evaluating whether there has been a constructive refusal to admit dilutes the evidentiary standard we have established to ensure that there is a reasonably-based government interest countervailing full compliance with the statute. Moreover, police should be encouraged to knock and announce their presence and wait to be admitted or refused entry whenever possible. In some cases, announcement of police presence in force may well decrease the possibility of violence and enhance officer safety. A sudden forced entry, particularly into a small space during the day when people are expected to be up and about, runs an increased risk of injury to innocent occupants of the premises being searched.[1] If officers choose some form of announcement and wait, even if insufficient to fully satisfy the statute, in situations

---

1. In this case, the premises to be searched was a small residential apartment. Officer Hicks testified that he knew that the apartment was occupied by the family of a friend of the appellant, including four children.

where there is the requisite evidence of exigent circumstances, there is no risk that their voluntary compliance efforts will frustrate police investigative work because seized evidence will not be suppressed as the police were not required to have complied with the statute at all. Thus, there is no need for an in-between measure. For these reasons, I disagree in part with the majority's opinion.