Adonnis ATCHISON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 06–CF–1086, 06–CF–1098.

District of Columbia Court of Appeals.

Argued July 9, 2009.

Decided Oct. 29, 2009.

William T. Morrison, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, Roy W. McLeese III, and Gilberto Guerrero, Jr., Assistant United States Attorneys were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and REID and KRAMER, Associate Judges.

WASHINGTON, Chief Judge:

A jury found Adonnis Atchison guilty of second-degree murder and assault with a deadly weapon ("ADW"), as well as related weapons offenses in two separate incidents. Atchison appeals from his convictions, contending that the trial court erred by (1) failing to suppress the weapon that

was recovered as a result of the execution of a search warrant in a manner that violated the District of Columbia's knock and announce statute; (2) failing to sever the indictments for murder and ADW; and (3) instructing the jury on second-degree murder as a lesser-included offense under first-degree premeditated murder. Finding no errors, we affirm.

## I.

Atchison was convicted of the murder of Marlow Willis who, on the morning of January 1, 2004, was found laying face down in a field with one gunshot wound on the side of his head and another in his back. At trial, the government presented evidence that Atchison had admitted his involvement in the shooting on at least three occasions during various conversations with friends that took place approximately two months after the shooting. One of his friends, Jerome Fleming, testified that he was told by Atchison that on the night of the shooting Atchison was riding around with Richie Landecho and Marlow Willis smoking marijuana when Landecho forced Willis out of the car and ordered him to start running. Landecho then shot Willis in the back before calling Atchison over and telling him to shoot Willis, whereupon Atchison shot Willis in the head with the weapon.

Daniel Scott, another friend of Atchison's who attended the same New Year's Eve party that Atchison, Landecho, and Willis had attended prior to the shooting, testified that Atchison told him that he shot Willis in the head after Landecho shot Willis in the back. Both Fleming and Scott further testified that each had seen Atchison carry a .357 caliber revolver with a brown or wood handle both prior to and following Willis' shooting, and that he usually kept the firearm in his bedroom closet. Scott additionally testified that Atchison slept in a double bed, the larger of two beds in his apartment.

On approximately October 20, 2004, Detective John Bevilacqua received a tip from an informant, who had previously provided him with reliable information, that Atchison possessed an illegal firearm at his residence and that the gun may have been used in a homicide. The informant described the weapon as a silver revolver that was kept under the mattress of a bed in Atchison's apartment, a one-bedroom basement apartment identified by street and number, and that he had seen the same gun in the possession of someone named "Adonnis" subsequently identified by Detective Bevilacqua as Adonnis Atchison. Detective Bevilacqua had previously stopped Atchison on more than one occasion, and consequently knew to whom the informant referred. The informant also indicated that Atchison occasionally carried the firearm on his person when he went out. Detective Bevilacqua obtained a search warrant for Atchison's residence on October 22, 2004, and asked the informant to notify him when Atchison was home in order to avoid execution of the warrant when Atchison was out carrying the firearm. On the afternoon of October 30, 2004, the informant called Detective Bevilacqua to inform him that Atchison was at his residence, and Detective Bevilacqua, along with other officers, executed the warrant approximately one hour thereafter. Detective Bevilacqua testified that upon arriving at Atchison's residence at 3:55 p.m., the officers knocked twice and announced their presence, heard nothing, waited fifteen seconds and then forcibly entered the apartment with a battering ram. Atchison was not present in the apartment, nor did he appear during the search. The only occupant in the residence was Atchison's step-father, Steven Kemper—who owned the apartment and to whom Atchison paid nominal rent—who was watching television in the living room and was visible to the police when they

entered through the front door. The officers then retrieved from the bedroom of the apartment both a .357 caliber revolver from under the mattress of the double bed and ammunition for a .357 caliber revolver from the closet.

Atchison was also charged and convicted of ADW for assaulting Antonio Smith. That charge arose out of an apparently unrelated incident that occurred on October 29, 2004, during which Atchison angrily confronted Smith outside of Smith's apartment about an earlier disagreement between the two of them. Atchison attempted to punch Smith, and Smith retaliated by swinging back with his fist. Atchison then pulled a knife out of his pocket, stabbed Smith in his side and ran away. A short time later, Atchison returned and again confronted Smith. This time Atchison was carrying a chrome .357 caliber revolver with a wood handle. Atchison struck Smith on the back of the head with the handle of the gun and then fled. At trial, Smith testified that the gun that was recovered from Atchison's apartment was the same one used by Atchison to hit him.

Atchison was charged with the murder of Willis and the assault on Smith in two separate indictments that were joined for trial. Corresponding weapons charges were also brought against him. Atchison moved to sever the indictments and the trial court denied the motion, holding that jury confusion of the murder and ADW counts was unlikely, but noting that the issue could be raised again should a risk of prejudice arise during trial. Following the

jury trial, Atchison was convicted of ADW, but the jury could not reach a verdict on the murder charge and a mistrial was declared as to that charge. Atchison was subsequently retried for the murder of Willis and convicted of second-degree murder as a lesser-included offense of first-degree murder. While Atchison raises several claims of error on appeal, we find only one that merits any extended discussion and that is his contention that the police failed to comply with the District's knock and announce statute, and therefore, the trial court erred in denying his motion to suppress the .357 caliber handgun and ammunition that was found in Atchison's bedroom pursuant to the search.

## II.

The primary question before us is whether, under the circumstances presented here, the officers' delay of fifteen seconds before forcibly entering the apartment violated the District of Columbia's knock and announce statute, D.C.Code § 23–524(a) (2001). Atchison contends the trial court erred by finding that the officers complied with the District's knock and announce statute because the fifteen second delay between the announcement of their presence at the door and their uninvited entrance into the apartment could not have been reasonably understood as a constructive refusal to admit them, and therefore, the evidence of the revolver and ammunition discovered during the search of his apartment should have been suppressed at trial.[1] We defer to the trial

1. We are well aware that the Supreme Court in *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), ruled that suppression of evidence retrieved in the execution of an otherwise lawful search warrant is not the appropriate remedy for a violation of a knock and announce statute. *Id.* at 599, 126 S.Ct. 2159 ("[T]he social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to

such violations is minimal to begin with, and the extant deterrences against them are substantial.... Resort to the massive remedy of suppressing evidence of guilt is unjustified."). However, because we conclude that the officers' actions in this case did not run afoul of the District's knock and announce statute, we need not reach the issue of whether exclusion ·of the evidence in this case is an appropriate remedy.

court's findings of fact, unless clearly erroneous, and review *de novo* the trial court's legal determination as to whether, in the circumstances, the police complied with the knock and announce statute. *See United States v. Owens,* 788 A.2d 570, 573 (D.C. 2002).

 While the law favors the execution of a warrant under circumstances where the owner of a property is available to respond to the demands of law enforcement and assist with their lawful entry into the home or residence, D.C.Code § 23–524(a) states that an "officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...." *See also Owens, supra,* 788 A.2d at 573 (quoting D.C.Code § 23–524(a)). The requirement to give notice of authority and purpose before entering is commonly referred to as the "knock and announce" requirement. It is designed to serve several purposes including reducing the potential for violence against both police officers and occupants when police officers seek to enter a residence; preventing needless destruction of property; and recognizing the importance of an individual's expectation of privacy in his or her house. *See Poole v. United States,* 630 A.2d 1109, 1116 (D.C.1993) (quoting *United States v. Bustamante–Gamez,* 488 F.2d 4, 9 (9th Cir.1973)). Under the statute and this court's jurisprudence, the police need not wait for an actual reply before forcibly entering a residence "(1) where the police may 'reasonably infer from the action or inaction of the occupants that they have been constructively refused admittance'; and (2) where the police are confronted with 'exigent' circumstances, such as the imminent destruction of evidence, or some danger to the entering officers." *See id.* (quoting *Williams v. United States,* 576 A.2d 700, 703 (D.C.1990)).

 Whether knocking twice and delaying forcible entry for fifteen seconds constitutes substantial compliance with the knock and announce statute requires consideration of the particularized facts of the case. "The Fourth Amendment's knock and announce principle, given its fact-sensitive nature, cannot be distilled into a constitutional stop-watch." *Owens, supra,* 788 A.2d at 577. We have previously considered the reasonableness of police entry following announcement and a brief delay, and have refused to "reduce[ ] [the constructive] refusal requirement to a mere symbolic pause before the police break down the door." *Poole, supra,* 630 A.2d at 1118. And, moreover, we have specifically noted that "a wait of fifteen seconds after announcement of authority and purpose is not *per se* or even presumptively evidence that the police have been constructively refused admittance." *Owens, supra,* 788 A.2d at 577. However, the fact that a fifteen second delay is not presumptive evidence of constructive refusal does not mean, as Atchison would have us find, that a fifteen second delay can never constitute a constructive refusal. We emphasize that "[j]udicial determinations of the lawfulness of a forced entry are highly contextual and must be based upon a consideration of the totality of the circumstances." *Poole, supra,* 630 A.2d at 1118. After a review of the facts and circumstances of this case, we are satisfied that the totality of the circumstances presented here support the reasonableness of the officers' belief that they were being constructively refused admittance into the apartment after waiting fifteen seconds for a response.

 As an initial matter, "the size of the premises to be searched is a relevant factor" because normal response times can be assumed to be longer for occupants of large premises. *See Owens, supra,* 788 A.2d at 576. Here, Atchison's residence

was a relatively small one-bedroom basement apartment. Thus, a reasonable police officer would not expect it to take a relatively long period of time to respond to an announcement of authority and purpose. Moreover, the officers executed the warrant in the middle of the afternoon, 3:55 p.m., a time when people are assumed to be awake and to be "able to respond with reasonable alacrity." *Id.* Although *Owens* is factually different from this case because there the officer had announced his presence thirty seconds before announcing his authority and purpose, our observation that because the warrant was executed during the day at a one-bedroom apartment "it was reasonable for [the officer] to infer that his demand for admittance had been heard and that someone complying would do so, if not by opening the door, at least by vocally signaling the intent to do so within fifteen seconds," has force here as well. *Id.*

▮ Additionally, in executing the search warrant the officers had reason to believe that Atchison, whom Detective Bevilacqua had stopped for unrelated reasons on more than one prior occasion, was home and had access to a deadly weapon that was suspected of having been used in a homicide. We have held that "in a danger-fraught situation, the officers may quite reasonably infer refusal more readily than under other circumstances." *Id.* at 577. Of course, danger to an officer can constitute exigent circumstances sufficient to excuse compliance with the knock and announce requirement entirely, but information pertaining to potential danger facing the officers upon their announcement and entry can also be relevant in determining when the officers reasonably inferred constructive refusal.[2] "[I]n assessing a relatively short period of delay it is permissible to take into account circumstances which at least come close, under the ... danger to person exception, to justifying entry without notice at all...." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.8, at 676 (4th ed. 2004). Inherent in such an assessment is recognition that police "stand in a particularly vulnerable position once they have announced themselves. The longer the police wait, the more readily the occupants may arm themselves." *Poole, supra,* 630 A.2d at 1120.

In *Poole,* where we found exigent circumstances, we held that the fact that the defendant was believed to have a revolver on the premises and was suspected of committing numerous violent crimes created "a realistic possibility he would respond violently to the arrival in force of police announcing their intent to search his apartment." *Id.* at 1122. Additionally, in *Owens,* where we found constructive refusal, we held that "the police had specific reason to believe that firearms including a nine millimeter were being kept on the premises within ready access," and though that fact was not enough to constitute exigent circumstances, "it supported a reasonable fear by the police that waiting too long after knocking and declaring their purpose would expose them to undue personal danger." *Owens, supra,* 788 A.2d at 577. Similarly, here, the officers had particularized knowledge as to the potential danger triggered by their announcement of authority and purpose because, importantly, the officers had reason to believe Atchison kept his illegal firearm in the residence and that he was home at the time of the warrant's execution. Detective

---

**2.** Here, the trial court made no finding regarding the existence of exigent circumstances, and the government does not argue that the circumstances of this case were suffi- ciently exigent to have excused a failure to comply with the knock and announce requirement, and thus that issue is not before us.

Bevilacqua had received credible and corroborated tips from the informant in other cases prior to the tip about Atchison's weapon. The informant specifically noted that the gun may have been used in a homicide, that Atchison sometimes carried it on his person, and that Atchison was at home shortly before execution of the search warrant. This known risk that a potentially armed and violent person occupied the apartment justified the officers' taking precautions to protect their own safety, including waiting only a brief period after knocking and announcing themselves before entering the apartment forcibly.

Under these circumstances, where the warrant was executed at a one-bedroom residence in the middle of the afternoon, and in connection with a murder investigation, and when the officers had reason to believe that a suspect was inside the residence with access to a firearm, we are satisfied that it was not unreasonable for the officers to infer constructive refusal after they announced their presence and received no response within fifteen seconds.[3]

### III.

Atchison's remaining claims of error—that the trial court erred in denying his motion to sever the two indictments and that the trial court improperly instructed the jury on second-degree murder as a lesser-included charge under first-degree murder—can be summarily addressed.

### A.

First, Atchison argues the trial court erred by denying his motion for severance of the murder and ADW indictments. We will not reverse the trial court's denial of severance absent a clear abuse of discretion. *See Arnold v. United States*, 511 A.2d 399, 404 (D.C.1986) ("A motion for severance on the ground of prejudicial joinder is committed to the sound discretion of the trial court."). "To meet that burden, the defendant must show the most compelling prejudice from which the court would be unable to afford protection if both offenses were tried together. It is not sufficient to show that the defendant would have a better chance of acquittal if the charges were tried separately." *Id.* (internal citation and formatting omitted). Rather, the defendant must show either that the evidence of each joined crime would have been mutually inadmissible to prove the other had they been tried separately, or that the jury was unable to keep the evidence of each distinct and separate in deliberating and reaching a verdict. *See, e.g., Void v. United States*, 631 A.2d 374, 379 (D.C.1993). Additionally, to constitute reversible error, the verdict must have been "substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

We agree with the trial court both that the jury was able to keep the charged crimes of murder and ADW separate and distinct in their minds and that the two crimes were sufficiently linked to justify their joinder for trial because of the evidence that the same weapon was used in both offenses. We are satisfied that the evidence presented by the government for the murder and ADW charges, respective-

---

3. We reject Atchison's argument that the delay was insufficient because the officers did not hear any noises or suspicious sounds before forcibly entering the residence. Although the presence of noises or suspicious sounds following an officer's announcement can hasten an officer's inference of constructive refusal or create exigent circumstances sufficient to excuse compliance, the absence of such noises does not foreclose the officers from inferring constructive refusal when the existence of other factors supports the reasonableness of the entry. *See Poole, supra,* 630 A.2d at 1120–21.

ly, would have been mutually admissible to prove either of the crimes because the same gun was used in each and both Fleming and Smith testified as witnesses regarding both incidents. Moreover, evidence of Atchison's possession of the .357 caliber handgun during both the shooting and assault incidents would have been directly admissible to prove the weapons charges. As such, we agree with the trial court that joinder was permissible on mutual admissibility grounds, and therefore, that Atchison was not unfairly prejudiced by the joinder.

Additionally, we also uphold the trial court's determination that there is no reason to believe that Atchison was prejudiced unfairly by joinder of the two counts against him. The ADW and murder offenses were committed on separate occasions, nine months apart, against different victims, the prosecutor presented the evidence pertaining to each crime separately, and the trial court repeatedly instructed the jury to keep the evidence separate and to follow the instructions on the presumption of innocence. *See Gooch v. United States,* 609 A.2d 259, 265 (D.C.1992) (finding severance unnecessary where the two charged crimes involved different victims at different times and locations and the facts would not confuse the jury). Moreover, the first jury convicted Atchison of ADW but was unable to reach a verdict on the murder charge, demonstrating that it successfully evaluated the evidence of each crime independently. Accordingly, the trial court did not abuse its discretion in denying Atchison's motion to sever.

## B.

██ Finally, Atchison argues that the trial court erred in instructing the jury on second-degree murder as a lesser-included offense of first-degree premeditated murder because there was no evidence that Atchison acted with "specific intent to kill or inflict serious bodily harm, or a conscious disregard of the risk of death or serious bodily injury" sufficient to support a conviction of second-degree murder. *Coleman v. United States,* 948 A.2d 534, 550 (D.C.2008). Specifically, Atchison contends that the government's theory of the case did not support the giving of the second-degree murder instruction because the government argued that Atchison shot Willis with premeditation and did not argue that Atchison acted with a lesser *mens rea.* To permit the giving of a lesser-included offense instruction, however, there must be only some evidence, however weak, to support the elements of the lesser-included offense. *See id.* at 551 ("A lesser-included offense instruction is proper where (1) the lesser included offense consists of some, but not every element of the greater offense; and (2) the evidence is sufficient to support the lesser charge.").

Although Atchison argues that there was insufficient evidence to support a finding that he possessed the *mens rea* necessary for second-degree murder, we disagree. Based on the evidence presented, a reasonable jury could find that after Atchison left the New Year's Eve party with Willis and Landecho, that Landecho ordered Willis out of the car, that Landecho shot Willis without Atchison's prior knowledge, and that Atchison then shot Willis reflexively out of fear or shock after Landecho ordered him to shoot. *See id.* at 551–52 (permitting a second-degree murder jury instruction as a lesser-included crime under first-degree premeditated murder when the evidence could be interpreted as establishing the *mens rea* for either first-degree premeditated murder or second-degree murder). Accordingly, there was sufficient evidence to support the second-degree murder jury instruction.

## IV.

Finding no merit in Atchison's assignments of error, we affirm his convictions.

*So ordered.*